## STATE v. SMART.
## (No. 736.)

INTOXICATING LIQUORS—LICENSES—SUNDAY—STATUTORY REGULA-
TION—CONSTITUTIONALITY—LOCAL AND SPECIAL STATUTES—RE-
SERVED QUESTIONS—JURISDICTION—STATUTES—ENACTMENT—REGU-
LARITY OF PROCEDURE—RECITALS IN LEGISLATIVE JOURNALS—CON-
STRUCTION—EFFECT—PRESUMPTION—TERRITORIAL STATUTES—AP-
PLICATION OF CONSTITUTIONAL PROVISION AS TO TITLE.

1. Section 1 of Chapter 86 of the Laws of 1888, prohibiting
   every person having a license to sell intoxicating liquors
   from keeping open his place of business, or disposing of
   any spirituous, malt, vinous or fermented liquors on his
   premises, on the first day of the week commonly called
   Sunday, was enacted as a police regulation, and applied
   uniformly to all persons within the state who had pro-
   cured and were lawfully engaged in the business of keep-
   ing a saloon under a license so to do.

2. A municipal charter or general statute authorizing a city to
   license, control and regulate the sale of intoxicating
   liquors within the city, in addition to a county license re-
   quired by law, does not give the city any power over the
   issuance of a county license for the sale of intoxicating
   liquors, though indirectly the refusal to issue a city license
   might operate to prevent such business being carried on
   within the corporate limits even under a county license.

3. One who obtains a county license to sell intoxicating liquors
   takes it subject to the general law of the state, and the
   license cannot protect him when he violates the law with
   reference to such business.

4. The provisions of the act approved March 9, 1888 (S. L.
   1888, Ch. 86, Sec. 1; Comp. Stat. 1910, Sec. 5979) prohibit-
   ing a licensed liquor dealer from keeping open his place
   of business or disposing of intoxicating liquors on his
   premises on Sunday was not in conflict with the act of
   Congress known as the "Springer Act", (24 Stat. U. S.,
   Ch. 818, p. 170) prohibiting territorial legislatures from
   passing local or special laws in certain enumerated cases,
   since the said act of the territory was a general law appli-
   cable to a particular class, not local, but as wide in its ap-
   plication as the then territory, now state.

5. Said act does not violate the provision of Section 1 of the
   14th Amendment to the U. S. Constitution prohibiting any
   state from denying to any person within its jurisdiction

the equal protection of the laws; there being no discrimination in the statute providing for the issuance of licenses for the sale of intoxicating liquors, and the legislature having the right to enact appropriate laws in aid of its police power to regulate the liquor traffic.

6. Whether section 2 of the said act of 1888 declaring it unlawful to keep open on Sunday for the transaction of business therein, any barber shop, store, shop or other place of business, with certain stated exceptions, is or is not a proper exercise of the police power of the state cannot affect the validity of the first section of the act prohibiting a licensed liquor dealer from keeping open his place of business or disposing of intoxicating liquors on his premises on Sunday; said first section being complete in itself and relating to a separate and independent subject of legislation.

7. Section 1 of said act does not discriminate between different members of the class covered thereby, viz: licensed liquor dealers, and is not invalid as class legislation, but anyone choosing to engage in the business of selling intoxicating liquors must obtain and pay a license so to do and submit to the regulations and restrictions placed upon such business by the statute.

8. The legislative power to designate Sunday and require its observance is supreme and conclusive.

9. No constitutional question is raised by a reserved question whether a statute was so changed in its terms and language as incorporated in a subsequent revision of the statutes as to render the same nugatory and void, or whether such statute was included in said revision or repealed thereby.

10. A statute of the Territory of Wyoming is shown *prima facie* to have been legally enacted where it appears that the enrolled act filed in the office of the Secretary of State bears the signature of the President of the Council, the Speaker of the House, and the approval and signature of the then Governor of the Territory, and the burden is upon the party claiming that the statute never legally passed the legislature to show not only a doubt as to its regular passage by the legislature, but by an affirmative showing of the legislative journals that there was such a defect in the proceedings as to vitiate the purported enactment.

11. The fact that the journal of the Council (the upper house of the Legislature of the Territory) recited that a certain bill was received from the House, immediately after re-

citing its concurrence in a House amendment to the bill, will not be construed as showing that the Council did not have the bill before it when it concurred in the amendment, where it was also recited in the Council journal that the bill was taken from the · table on motion and the amendment made by the House concurred in; the fact that 'the bill contained an amendment, and that it was taken from the table and the amendment concurred in should outweigh the circumstance of the order in which the business of the day is recited in the journal.

12. The fact that a legislative journal recites that the enrolled act was signed before reciting a report of the committee that it had been correctly enrolled is not sufficient to show that the bill was signed before it was enrolled; the recitals all appearing in the journal entries of the same date, and it appearing that the enrolled act was signed by the presiding officer of each house and bears the signature and approval of the Governor.

13. Legislative journals showing the date on which various acts therein recited were done import absolute verity in that respect.

14. The proceedings of the legislature in the enactment of a statute are presumed to be regular, and that presumption is only to be overcome when it affirmatively appears from the journals to be otherwise.

15. Where, from the recitals of the legislative journals, there arises at most only a doubt as to the regularity of the procedure in the enactment of a statute it is the duty of the court to sustain the law.

16. The provision of the constitution (Sec. 24, Art. 3) that no bill, with certain stated exceptions, shall be passed containing more than one subject to be clearly expressed in its title, and that an act embracing a subject not expressed in its title shall be void only as to so much thereof as shall not be so expressed, was not retroactive and did not apply to the statutes of. the Territory of Wyoming or prevent any such statute from remaining in force as a law of the state under Section 3 of Article 21 of the Constitution expressly continuing in force all laws of the Territory of Wyoming then in force and not repugnant to the Constitution.

17. Section 1 of Chapter 86 of the Laws of 1888, closing saloons on Sunday, (Sec. 5979, Comp. Stat. 1910) was not repugnant to the Constitution of the state, but having been legally enacted as a statute of the Territory of Wyoming was continued in force as a law of the state under the

provisions of Section 3 of Article 21 of the Constitution
continuing in force all laws of the Territory then in force
and not repugnant to the Constitution.

18. Independent of the construction of the said statute, a
matter not before the court for consideration, the penalty
fixed therein to be imposed upon a licensed liquor dealer
convicted of keeping open his place of business or dis-
posing of intoxicating liquors on his premises on Sunday,
viz: a fine of not less than twenty-five nor more than one
hundred dollars, or imprisonment in the county jail not
exceeding three months, was not discriminative in such
sense as to render the act void.

[Decided November 17, 1913.]                 (136 Pac. 452.)

RESERVED QUESTIONS from the District Court, Albany
County; HON. CHARLES E. CARPENTER, Judge.

Certain questions were reserved for the decision of the
Supreme Court, under the statute authorizing the reserva-
tion of constitutional questions, in a criminal prosecution
wherein Peter Smart was charged with having violated the
law prohibiting a licensed liquor dealer from keeping his
place of business open or disposing of intoxicating liquors
on his premises on Sunday. The questions arose upon de-
murrer to the information.

*H. V. S. Groesbeck* and *S. C. Downey,* for the defendant.

The act under which the defendant is prosecuted as it
now appears in the published statutes was never passed.
The Upper House of the Legislative Assembly of the Terri-
tory, known as the "Council", passed a bill designated as
Council File No. 41, and on the last day of the session the
bill went to the House, where it was amended, and after-
wards returned to the Council. From the Council journals
it is recited that the bill was taken from the table and the
House amendments concurred in by *viva voce* vote, *before*
the bill reached the Council, and before the same could pos-
sibly have been read or laid before that body, and that after
other business had been transacted the amended bill was re-
ceived from the House. Thus it appears that when the
House amendments were concurred in by the Council the

bill was not before that body, and after the bill was received back from the House there is nothing to show a concurrence in the House amendments. Legislative journals may be examined and considered for the purpose of determining whether a law was properly enacted. (6 Curr. Law, 1522; 4 Id. 1524; Moody v. State, 43 Ala. 155; Smithee v. Campbell, 41 Ark. 471; Powell v. Hays, 83 Ark. 448, 104 S. W. 177; Division of Howard County, 15 Kan. 194; State v. Swan, 7 Wyo. 166, 40 L. R. A. 195, 75 Am. St. 889; State v. Cahill, 12 Wyo. 225; State v. Gillespie, 12 Wyo. 289; Younger v. Hehn, 12 Wyo. 259, 109 Am. St. 986; Brown v. Nash, 1 Wyo. 96; White v. Hinton, 3 Wyo. 753). There does not appear to have been a requirement as to statutes of the Territory that they should be authenticated by the signature of the presiding officers of both houses, except, perhaps, by legislative rule, and even within such a rule, an act would not be invalid by the absence of the signature of either of the presiding officers. (Simon v. State, (Ark.) 111 S. W. 991). When legislative journals are competent as evidence they import absolute verity and cannot be explained by parol. (2 Curr. Law, 1709).

The act has been considerably changed by the Revision of 1899. The changes in Section 1 of the Act are as follows: the omission of the word "Territory" in line three of the section, and changing the word "imprisonment" to "imprisoned". This alters the sense of the penalty imposed. As first enacted the penalty imposed was provided for as follows: "shall be fined in any sum not less than twenty-five (25) dollars or more than one hundred (100) dollars, or imprisonment in the county jail not to exceed three months." The change made by the revision commission is vital and an attempt to change a meaningless provision to one that might be capable of enforcement. Penal laws are to be construed strictly, a proposition founded upon the principle that the power of punishment is vested in the Legislative and not in the Judicial Department. The Legislature, not the court, must define a crime and ordain what the

punishment shall be.   (U. S. v. Wiltberger, 5 Wheat. 76).
The Revision Commission had no right to drop the word
"territory" in the first section, as their authority in that re-
spect was to change the word to "state", though it is a ques-
tion if they could lawfully do even that, as the statute ex-
pressly limited its operation to licensed liquor sellers under
the laws of "Wyoming Territory."   In Section 4 of the
original act it was declared that Sunday, within the meaning
of the act, "shall begin at mid-night Saturday", while the
Revision makes it read, "shall begin *with* mid-night."   But
as the act was not a statute of the State of Wyoming, of
permanent character, because never legally or properly
passed as a statute of the territory, it could not have been
properly included in the Revision of 1899.

The act in question directly violates that provision of the
14th Amendment of the Federal Constitution prohibiting
any state from denying to any person within its jurisdiction
the equal protection of the laws.   It also violates the inhibi-
tion contained in the "Springer Act" of 1886, which was in
force when the territorial statute was enacted, in this:   That
it is a special law for the punishment of crimes or misde-
meanors, and further, grants to certain individuals special
privileges and immunities.   General provisions of a consti-
tution with reference to special and local legislation is ad-
dressed to the judgment and discretion of the Legislature,
but inhibition as to the cases enumerated therein is manda-
tory.   (People v. Election Comm'rs., 221 Ill. 9, 77 N. E.
321).   It is evident that the act was intended or should have
been intended to secure the proper observance of Sunday by
everybody, except in cases of necessity, charity or mercy,
but it attempts to require such observance only by licensed
liquor dealers and a few others.   Liquor dealers are not
permitted to keep open at all, but other places are allowed to
keep open "except" for the transaction of business therein.
This is a clear discrimination.   But the proviso in the second
section is the most pernicious.   It enumerates many occupa-
tions not to be included within the terms of the act, mention-
ing livery stables, news depots, farmers, cattle men and

ranch men, mechanics and the vendors of ice, milk, fresh meat and bread, "except as to the sale of liquors and cigars." This exception as to "cigars" is remarkable. Tobacco in every form except as a "cigar" may be sold. The attempted classification is arbitrary, partial and illusory. At common law acts performed on Sunday were valid unless expressly prohibited. (Amis v. Kule, 2 Yerg. 31, 24 Am. Dec. 463; Kepner v. Keefer, 6 Watts, 231, 31 Am. Dec. 460; Adams v. Hamell, 2 Doug. 73; 43 Am. Dec. 460; and note to Roberts v. Barnes, 48 Am. St. Rep. 647). The discriminations in this statute are so unfair and without any proper basis that they render the statute unconstitutional and void. (27 Ency. Law, 392; Armstrong v. State, 170 Ind. 188, 15 L. R. A. (N. S.) 646, 14 Ann. Cas. 141; Ex parte Kemler, 136 U. S. 436; Eden v. People, 161 Ill. 296, 52 Am. St. 365; Ex parte Jentzch, 112 Cal. 468; State v. Hinman, 65 N. H. 103, 23 Am. St. Rep. 22; State v. Ellet, 47 O. St. 90, 21 Am. St. 772; State v. Goodwill, 33 W. Va. 179, 25 Am. St. 863; Ex parte Westerfield, 55 Cal. 550, 36 Am. Rep. 47; Denver v. Bach, 26 Colo. 530, 46 L. R. A. 848; Mergen v. Denver, (Colo.) 104 Pac. 399; Dist. of Columbia v. Robinson, 30 App. Cas. (D. C.) 283, 12 Ann. Cas. 1094).

Since the pretended passage of the Sunday law, the liquor license statute has been amended giving a wide discretion to the several county boards in the granting of licenses, and prohibiting the granting of licenses outside of incorporated towns, &c. The several amendments to the statute clearly repeal the so-called Sunday law by implication, for by attempting to regulate the liquor traffic; prohibiting a sale at certain places, and at certain times, increasing the license fee, without regard to the time and days upon which liquor may be sold, the implication is clear that the so-called Sunday law was ignored, or considered obsolete, and it is a matter of common knowledge that the law was never enforced in some counties of the Territory and State and only occasionally enforced in others. A legislative enactment which is palpably absurd, unnatural, unjust, or impractica-

ble, is absolutely void. ' (2 Bland's Chancery, 209, 20 Am. Dec. 360; Hall v. Norfolk &c. Co., (W. Va.) 41 L. R. A. 669; Ragio v. State, 86 Tenn. 272).

It is clear, we think, that no part of said Sunday law is to be considered as a regulation of the liquor traffic. The act was for the avowed purpose of securing an observance of Sunday by everybody. Otherwise it is void. The second section of the act, standing alone, is unconstitutional. Considered in connection with the first section that section becomes unconstitutional because of the discriminations aforesaid in said Section 2. (Sutherland Stat. Constr., Secs. 174, 176, 178; State v. Swan, 7 Wyo. 166; Warren v. Mayor, 2 Gray, (Mass.) 84; Huber v. Martin, 127 Wis. 412, 15 Am. St. Rep. 1023).

*D. A. Preston,* Attorney General, for the State.

The steps in the procedure by which the bill was passed will be presumed in favor of its validity, and unless the journals positively show some irregularity, it will be presumed that all steps were regularly taken. The entries in Legislative journals of proceedings of a particular day are not necessarily to appear in the order in which they occurred. The failure to enter the proceedings in the exact order of occurrence will not affect the validity of an enactment. (Goff v. Richardson, 54 S. W. 264). The same presumption which attaches in favor of the constitutionality of a statute with regard to subject matter applies with reference to form and enactment. It is only in a case free from doubt that a statute will be declared invalid. (36 Cyc. 974; Saxton v. Perry, (Cal.) 107 Pac. 281; Weiss v. Stubblefield, 116 Pac. 205). The work of clerks in the Legislature accumulates during the closing days of the session, and there may be several Journal Clerks relieving each other, and thus causing entries to appear out of the order in which the proceedings occurred. The Revision of 1899 does not in any way change the law, nor its construction. (36 Cyc. 1067-1068). Where a word is omitted without legislative authority, the section of the revision must be read as origin-

ally enacted. (Com'rs. v. Wood, (Wyo.) 106 Pac. 923). And the same rule must apply when a word is changed. The controlling rule in the interpretation of statutes is the legislative intent. Section 6028, Compiled Statutes, 1910, states a rule for interpretation that cures any defects in the statute here complained of. Statutes of this kind, regulative of the liquor traffic, and providing the hours or days upon which only sales may be made, are uniformly held to be legally enacted within the police power of the State. (17 Ency. Law, 212-213; 1 Abbott's Munic. Corp. 250-260; State v. Bott, 31 La. Ann. 663; State v. Com. Pleas, 36 N. J. 72; State v. Bayonne, 39 Atl. 708; Decker v. Sargent, (Ind.) 25 N. E. 458; Davis v. Fasig, (Ind.) 27 N. E. 726; Bennett v. Pulaski, (Tenn.) 52 S. W. 913; Liherman v. State, 26 Neb. 464; People v. Bellett, 99 Mich., 151; State v. Soper, 71 Pac. 482; 23 Cyc. 75-76).

*H. Donzelmann, amicus curiae.*

As courts are generally averse to deciding difficult constitutional questions, if the case can be properly disposed of upon one question only, I desire to call the court's attention to a proposition presented by Sub-division 3 of Section 20 of Article 21 of the Constitution as applicable to the record in this case, which, it appears to me, will dispose of the case at bar, as well as settle the law applicable to like cases for the future. It seems to me that the case can be easily determined upon the construction of Sub-division 39 of Section 1440, Compiled Statutes, 1910, which continues in force Sub-division 3 of Section 20 of Chapter 57, Session Laws of 1884, a provision contained in the Charter granted to the City of Laramie, viz: "The City Council of said city shall have the power to license, control and regulate the sale of spirituous and intoxicating liquors within said city, in addition to the county license therefor, and for that purpose shall collect a license fee or tax from each dealer in spirituous or intoxicating liquors of not less than one hundred nor more than five hundred dollars, payable annually in advance, and the Council shall annually fix the amount to be paid for

such licenses. Each license shall be issued for one year and no less period, and shall clearly state upon its face such conditions as the Council may impose upon issuing the same, but such shall be transferable by consent of the Council."

This provision gives to the City of Laramie complete authority to control and regulate the sale of intoxicating liquors within said city. The word "regulate" means "A rule or order prescribed from management or government." (St. Louis v. Howard, 119 Mo. 46; *Ex parte* Patterson, 59 S. W: 1013; In re Houk, 70 Mich. 396). In the absence of specific constitutional restrictions, it is competent for the Legislature to empower a municipality to pass ordinances, operative within its limits, for the regulation or licensing of the liquor traffic, although the subject may already be provided for by the general laws of the State. And a municipal charter, or its ordinances so authorized, either expressly or by necessary implication, supersede the general laws on the subject within the limits of the corporation. (Black on Intox. Liq., Sec. 217; Davis v. State, 2 Tex. App. 425; Comm. v. Fredericks 119 Mass. 199; State v. Harper, 42 La. Ann. 312; Mason v. Trustees, 4 Bush, 406; St. Paul v. Troyer, 3 Minn. 291; Moundsville v. Fountain, 27 W. Va. 182). As to inconsistency between the grant of power in the municipal charter and the general law of the State it is to be remembered that the incorporation of a municipality is an act of legislation, as much so as the enactment of a statute on any other subject, and hence the law conferring such power upon the city is to be regarded only as a more recent and competent expression of the legislative will. (*Ex parte* Cowert, (Ala.) 9 So. 225; Wood v. Mears, 12 Ind. 515; Mill v. Jones, 80 Ala. 96). The Legislature may delegate power to regulate the sale of intoxicating liquors to the council or the governing board of incorporated cities. (Bronson v. Oberlin, 41 O. St. 482; Noble v. City of Cheyenne, 7 Wyo. 432; 1 Dillon Munic. Corp. (4th Ed.) Sec. 308; Gregory v. State, 20 Tex. App. 210). The following cases are cited as supporting the general proposition here

submitted: Minden v. Silverstein, 36 La. Ann. 912; *Ex parte* Byrd, 84 Ala. 20; Rochester v. West, 164 N. Y. 510; St. Johnsbury v. Thompson, 59 Vt. 300; State v. Clarke, 54 Mo. 17; State v. De Bar, 58 Mo. 395; Mernaugh v. Orlando, 41 Fla. 433).

SCOTT, CHIEF JUSTICE.

This case was prosecuted under the provisions of Chapter 86, Session Laws 1888 of Wyoming, Approved March 9, 1888, entitled "An Act relating to the proper observance of the first day of the week, commonly called Sunday." Said act as originally passed reads in its entirety as follows:

*"Be it enacted by the Council and House of Representatives of the Territory of Wyoming:*

"Section 1. Every person or persons, company or corporation, having license to sell liquors under the laws of Wyoming territory, who shall keep open, or suffer his or their agent or employe to keep open, his or their place of business, or who shall sell, give away or dispose of or permit another to sell, give away or dispose of, on his or their premises, any spiritous, malt, vinous or fermented liquors, or any mixtures of any such liquors, on the first day of the week, commonly called Sunday, or upon any day upon which any general or special election is being held, shall be guilty of a misdemeanor, and, upon conviction, shall be fined in any sum not less than twenty-five dollars, or more than one hundred (100) dollars, or imprisonment in the county jail not to exceed three months.

"Sec. 2. It shall be unlawful for any person or persons, company or corporation, to keep open any barber shop, store, shop or other place of business for the transaction of business therein, upon the first day of the week, commonly called Sunday: *Provided,* This section shall not apply to newspaper printing offices, railroads, telegraph companies, hotels, restaurants, drug stores, livery stables, news depots, farmers, cattlemen and ranchmen, mechanics, furnaces or smelters, glass works, electric light plants and gas works, the vendors of ice, milk, fresh meat and bread, except as

to the sale of liquors and cigars. Any person, company or corporation who shall violate the provisions of this section, shall, on conviction thereof, be fined in a sum of money not less than twenty-five dollars, nor more than one hundred dollars, for each offense.

"Sec. 3.   So much of section ten hundred thirty-four (1034) of the Revised Statutes of Wyoming as conflict with this act and other acts and parts of acts inconsistent with this act, are hereby repealed.

"Sec. 4.   For the purpose of this act the first day of the week, commonly called Sunday, shall begin at midnight Saturday and terminate the following midnight.

"Sec. 5   This act shall take effect and be in force from and after its passage.

"Approved March 9, 1888."

The case was before this court on reserved question and remanded without answering the questions, the decision being handed down on September 12, 1910. (18 Wyo. 436, 110 Pac. 715). The information was thereafter amended and filed in that court on March 13, 1911, and it was thereafter carried on the docket of the lower court as No. 1032. On November 7, 1911, defendant demurred to the information on the ground that the facts stated therein do not constitute an offense punishable by the laws of the State of Wyoming. The demurrer was argued and submitted to the court on May 11, 1912, and the court upon consideration on that day overruled the demurrer as to all statutory grounds but deeming certain difficult constitutional questions affecting the validity of the statute under which the prosecution is sought to be maintained, involved, reserved those questions, ten in number, to this court for its decision. The questions stript of their verbiage may be stated as hereinafter set forth.

1.   The First, Second, Eighth and Tenth questions may be discussed and considered together. They are as follows:

"1.   Was said act in violation of the provisions of Section 1 of the Fourteenth Amendment to the Constitution of the United States, and particularly the provisions therein:

'Nor (shall any state) deny to any person within its juris-
diction the equal protection of the laws', and therefore
void?"

"2. Was said act of March 9, 1888, known as the Sunday
Law, in violation of any of the provisions of the Act of
Congress known as the 'Springer Act,' the same being Chap-
ter 818 of Volume 24 of the U. S. Statutes at Large, page
170, and particularly of the following provisions thereof:

'That the legislatures of the territories of the United
States now or hereafter organized shall not pass local or
special laws in any of the following enumerated cases, that
is to say:  *   *   *   *   *   *   *  For the punishment of
crimes or misdemeanors.  *   *   *   *   *   *   *  Granting
to any corporation, association or individual any special or
exclusive privilege, immunity or franchise *whatever*.

"In all other cases, where a general law can be made appli-
cable, no special law shall be enacted in any of the territor-
ies of the United States by the Territorial legislatures
thereof,'—and therefore void?"

"8. Does said act discriminate unconstitutionally and un-
lawfully against liquor sellers as to the penalty fixed in the
original act?"

"10. Does said act unconstitutionally and unlawfully dis-
criminate against liquor sellers and in favor of others per-
mitted to do business therein on Sunday?"

The act had to do with the regulation and sale of intox-
icating liquors. It was in so far as it referred to the sale
and keeping open on Sunday a saloon or place where in-
toxicating liquors were exposed for sale, a law in the
nature of a police regulation, and applied uniformly to all
persons within the state who had procured and were law-
fully engaged in the business of keeping a saloon under a
license so to do. Under the general law it is unlawful to
sell, give away or dispose of liquor without having first ob-
tained a county license as required by law. (Secs. 2832,
2838, Comp. Stat. 1910). The law is a regulation of a
licensed business and which business is unlawful at any
time without such license. It protected the licensee from

punishment for an act which would be otherwise unlawful. (23 Cyc. 110, 111, 112). It is provided by special charter of the City of Laramie (Sec. 1440 Comp. Stat.) as follows: "Said city, in its corporate capacity, is authorized and empowered to enact ordinances for the following purposes, in addition to the other powers granted by this chapter." * * * "Fourth; To restrain, prohibit and suppress tippling shops, and all places where intoxicating liquor is sold, * * * * desecrations of the Sabbath day, commonly called Sunday, and all kinds of public indecencies;" * * * * * * *. "Thirty-ninth. The city council of said city shall have the power to license, control and regulate the sale of spirituous and intoxicating liquors within said city, in addition to the county license therefor, and for that purpose shall collect a license fee or tax from each dealer in spirituous or intoxicating liquors of not less than one hundred dollars nor more than five hundred dollars, payable annually in advance, and the council shall annually fix the amount to be paid for such licenses. Each license shall be issued for one year and no less period, and shall clearly state upon its face such conditions as the council may impose upon issuing the same; but such shall be transferable by consent of the council."

It was not the intention as evidenced by the provision of the charter nor by the general statute that the local municipal government should have any power over the issuance of a county license to keep a saloon, though indirectly the refusal to issue a city license would operate in preventing the carrying on of such business within the corporate limits even though a county license had been obtained therefor. The saloon keeper takes his county license subject to the general law of the state. His business is restricted to the provisions of the law and the grant in the license is restricted to and must be considered within the provisions of the law (23 Cyc. 113), and when he violates the law with reference to such business it is apparent that his license cannot protect him. (23 Cyc. 191).

The act is not in conflict with the provisions of the Act of Congress, Chapter 818, Volume 24 of the U. S. Statutes

at Large, page 170, known as and commonly called the "Springer Act," because the act under consideration was neither local nor special. The defendant here is prosecuted under a general law applicable to a particular class not local but as wide in its application as the then territory, now state. The Springer Act was not violated for it prohibited the territorial legislatures from passing any local or special law "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." The defendant is prosecuted under a general law. Nor was the enactment in violation of the provision of Section 1 of the 14th Amendment to the Constitution of the United States that "Nor (shall any state) deny to any person within its jurisdiction the equal protection of the laws." There was no discrimination in the act under which the defendant procured his license. The amount thereof was a fixed amount applicable to all equally alike who obtained such a license. (23 Cyc. 80). The Constitution clearly lodged in the legislature the right to enact appropriate laws in aid of its police power to regulate the liquor traffic. As to whether section 2 of the act is or is not constitutional as an exercise of the police power of the state need not be here considered for whether it is or not can not affect the validity of the first section of the act, which is complete in itself and treats of a subject of separate and independent legislation in itself. We may assume in a sense that the legislation was class legislation but the law does not discriminate between different members of that class, —that is to say, those engaged in the business of a licensed liquor dealer. Any one who chooses to engage in such business must obtain and pay a license so to do and submit to the regulations and restrictions placed upon such business by the statute. It was said in Borck v. State, (Ala.) 39 So. 580: " If the state can prohibit the sale as to all persons, it certainly has the power to prohibit it as to a class that the state deems unfit to engage in the business;— to such as will not observe and obey the laws of the state made in regard to the traffic." (*Ex parte* Burke, 59 Cal. 6,

43 Am. Rep. 231; Sherman v. Patterson, 82 N. J. L. 345, 82 Atl. 889). In State v. Grossman, 214 Mo. 233, 113, S. W. 1074, it was held that prohibiting the keeping open of a dram shop or the selling, giving away, or otherwise disposing of any liquor on Sunday is not invalid as class legislation. The legislative power to designate Sunday and require its observance is supreme and conclusive. (Hennington v. Georgia, 163 U. S. 299, (16 Sup. Ct. 1086, 41 L. Ed. 166); 1 A. R. C. 554; State v. Dolan, 13 Idaho, 693, 92 Pac. 995 (14 L. R. A. (N. S.), 1259; Dist. of Columbia v. Robinson, 30 App. D. C. 283, 12 Ann. Cas. 1094). It has been held that the legislature may select any day of the week and require that all business should be suspended on such day, works of necessity and charity being excepted. Indeed, in the act under consideration, it is declared unlawful for any saloon keeper to keep his place of business open or sell intoxicating liquors on election days. To each of the questions numbered 1, 2, 8 and 10 we answer "No."

2. Questions 5 and 6 are as ollows: .

"5. Was said Sunday law, so changed in its terms and original language in sections 2642, 2643 and 2644 of the Revised Statutes of Wyoming, 1899, as to render the same nugatory and void?"

"6. Was said act included in said revision of 1899 or repealed thereby?"

It is apparent that these questions go only to the construction of the statute and do not raise any constitutional question and for that reason this court is without jurisdiction to answer them and returns the same unanswered.

3. Question number 7 is as follows:

"7. Was said act lawfully passed as disclosed by the Journals of the two houses of the tenth legislative assembly of the Territory claiming to pass the same?"

It is urged that the law never legally passed the legislature and, therefore, failed to become a law. It is conceded that the enrolled act filed in the office of the Secretary of State bears the signature of the President of the Council, the Speaker of the House and the approval and signature

of the then Governor of the Territory. The legal enactment of the law appears at least *prima facie* and the burden is upon the defendant to show not only that there is a doubt as to whether the act regularly passed the legislature, but to make an affirmative showing from the journals of both or either branch of the legislature that there was such a defect in the proceedings as to *vitiate* the purported enactment. The history of the bill as gleaned from the House and Council Journals shows that on February 20, 1888, the bill was first introduced in the Council and all proceedings were regular and with a few amendments the bill passed the Council on March 9th, following, as Council File No. 41, entitled, "A Bill for the proper observance of Sunday." On the same day as appears from the House Journal at page 310, the bill reached the House and was read the first time, and after an amendment was under suspension of the rules passed to the third reading, read, placed upon its final passage and regularly passed by an aye and nay vote, 14 of the members voting aye, 6 voting no, absent 3. In the Council Journal at page 258 appears the following: "March 9, 1888, C. F. No. 41 was then taken from the table on motion of Mr. Holliday and the amendments made by the Honorable House concurred in." Immediately following this recital and on the same page as a part of the day's proceedings the following entry appears, to-wit: "The chair announced signing Council Enrolled Acts Nos. * * * 29 * * *." Then follows the recital of the receipt of the following message from the House, to-wit:

"Hall of the House, Cheyenne, Wyo., March 9, 1888. Hon. President of the Council:

Sir: I have the honor to inform your honorable body that the House has this day passed C. F. No. 41 'relating to the proper observance of Sunday' as amended in section 2 (rider attached) and the said bills are herewith respectfully enclosed.

Very respectfully,
H. GLAFCKE, Chief Clerk."

On page 259 of the Council Journal the following appears:
                                "Cheyenne, March 9, 1888.
Mr. President:

Your committee No. 12 beg leave to report back Council Files Nos. *41* and *47* correctly enrolled. Robert Smith, Chairman." Under date of March 9, 1888, House Journal 312, "The Speaker announced he had signed Council Enrolled Act No. 29 relating ·to the proper observance of Sunday. * * * * * *. On motion a recess was taken for ten minutes. House reconvened at 5 :20 p. m." The enrolled act was then officially delivered to the Governor, who officially approved and signed it, and ·by separate message to each so notified the Council and the House of his approval and the affixing of his signature thereto. It is here urged that the Council did not have the bill before it when it concurred in the amendment. It is also urged that the President of the Council signed the bill before its enrollment. That the Council did not have the bill before it at the time it concurred in the amendment can ·be inferred, if at all, from the fact that the Journal recites the receipt of the communication from the House immediately after the recital of its concurrence in the amendment. But the journal also recites that the bill was taken from the table on motion of Mr. Holliday and the amendment made ·by the House concurred in. It is a self-evident fact that the bill could not have been taken from the table unless it was there; and the recital that it was so taken from the table, and the further fact that it contained an amendment of which the Council could have had no knowledge in the absence of the bill, to our minds outweighs the circumstance of the order in which the business of the day appears on the journal. The same is true of the order of the recitals of the journal on which it is urged that the bill was signed before it was enrolled. The journal recites that the enrolled act was signed, and it so appears on file in the office of the Secretary of State (then Territory), and if the journal speaks the truth in that matter it was enrolled before it was signed, notwithstanding the order of the recitals of the day's ·business in the journal.

(Goff v. Rickerson, Sheriff, 61 Fla. 29, 54 So. Rep. 264). The recitals of the journals cannot be here disputed and they recite that the President of the Council and the Speaker of the House, respectively, did sign the Enrolled Act and thereafter such Enrolled Act was sent to the Governor for his approval, and such Enrolled Act as it appears on file in the office of the Secretary of State bears the signature of the President of the Council, the Speaker of the House and the signature and approval of the Governor. Taking the journal entries in their chronological order there may be some doubt as to the validity of the Act. The journals show the date on which these various acts were done and we think in that respect the recitals purport absolute verity. Further, the presumption obtains that such proceedings were regular and such presumption is only overcome when it affirmatively appears from the journals to be otherwise. Upon the recitals of the journals there arises at most only a doubt as to the validity of the act assailed, and that being so it is the duty of the court to maintain the law. To question number 7 we answer, "Yes."

4.   Questions number 3 and 4 are as follows:

"3.   Was said Act a valid law in force at the time of the adoption of the Constitution of this State of Wyoming?"

"4.   Was said Sunday law repugnant to the Constitution of Wyoming and void for that reason?"

The act having been legally enacted continued in force under the provision of Section 3, Art. 21 of the Constitution of the State unless repugnant thereto, and which is as follows: "All laws now in force in the Territory of Wyoming, which are not repugnant to this constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature." Section 15, Art. 5, of the Constitution also provides that "all prosecutions shall be carried on in the name of the State." The territorial legislature was not limited by the provision of the Constitution of the State (Sec. 24, Art. 3) to the effect that "if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as

shall not be so expressed." The State of Wyoming was not then in existence and there was no limitation upon the territorial legislature in that respect. The law was continued in force as a law of the State of Wyoming by virtue·of the provisions of the constitution. Section 24, Art. 3, was not retroactive but was intended to and did provide a rule and guide for the legislature in the future. (*Ex parte* Burke, 59 Cal. 6, 43 Am. Rep. 231). We therefore hold that the act was not repugnant to the provisions of the Constitution of the State of Wyoming and answer "Yes" to question number 3, and "No" to question number 4, respectively.

5.   Question number 9 is as follows:

"9.   Is such penalty intelligible, lawful, constitutional and enforceable against licensed liquor sellers?"

In so far as this question seeks a statutory construction independent of the constitutionality of the act it need not be discussed or answered. That the legislature had the right to fix a penalty is conceded and as to whether the act discriminates against licensed liquor dealers is discussed in another part of this opinion, in which we held adversely to defendant's contention. Independent of the construction of the act we answer that the penalty fixed in the original act was not discriminative in such sense as to render the act void and limiting our answer to this phase of the question, we answer, "No." The answers to the respective questions as herein made will be certified to the District Court of Albany county, except as to questions 5 and 6, which, for the reasons stated, we return to the trial court without answering.

BEARD, J., concurs.

POTTER, J., being ill, did not participate in ·this opinion.