McFARLAND v. CITY OF CHEYENNE, ET AL.

(No. 1889; March 12, 1935; 42 Pac. (2d) 413)

For the plaintiff there was a brief and the cause was argued orally by *Walter Q. Phelan*, of Cheyenne.

For the defendants, there was a brief and oral argument by *Harry B. Henderson, Jr.*, of Cheyenne.

BLUME, Justice.

This case is here upon reserved constitutional questions. The plaintiff, J. P. McFarland, brought this action in January, 1934, under the Declaratory Judgment Act of this state, to determine his rights. The petition alleges:

The City of Cheyenne is a municipal corporation, incorporated as such under a special charter (having a population of about 18,000). The defendant Archie Allison is its Mayor, and the defendant T. Joe Cahill is the duly appointed Chief of Police of the city. The plaintiff, during 1933 and for many years prior thereto, was a member of the paid police department regularly organized and maintained by the City of Cheyenne, receiving a salary of $145 per month; thereafter, and on the first day of January, the defendant Archie Allison and the defendant T. Joe Cahill attempted to remove and did remove the plaintiff from his position as such policeman, without any cause arising out of the good of the service and without serving or causing to be served upon the plaintiff a written notice, and

without giving the plaintiff any opportunity to answer any written cause or demand a public hearing before the City Commission of the City of Cheyenne. All this was done in violation of Sections 22-201 to 203, Rev. St., Wyo. 1931. Plaintiff accordingly prayed that his rights in the premises be declared and that he be reinstated and adjudged to be entitled to his regular compensation as a member of the police department during the time of his suspension. A demurrer to the petition was overruled. Thereupon the defendant answered, alleging, among other things, the physical incapacity of the plaintiff to serve as a member of the police department of Cheyenne, and that Sections 22-201 to 203 above mentioned are unconstitutional. The plaintiff filed a reply, denying the affirmative allegations contained in the answer. By stipulation, entered into by the parties, the essential facts alleged in the petition were agreed to be true, except that the mayor believed the removal of the plaintiff to be for the good of the service. Upon request of the attorney for the defendants, the trial court has submitted certain questions to this court for determination. Among these questions are some which relate purely to matters of statutory construction. These must first be passed upon by the lower court, and have no place in the record before us. In re Gillette Daily Journal, 44 Wyo. 226, 11 P. (2d) 265; Budge v. Commissioners, 29 Wyo. 35, 208 Pac. 874; State v. Kelly, 17 Wyo. 335, 98 Pac. 886. The investigation of these questions has doubtless added to the wisdom and learning of counsel, but the propriety of including them in the certified reserved questions is not perceivable. We have held, moreover, that we will not pass upon any constitutional questions until matters of statutory construction or of fact, which may dispose of a case, have been decided by the trial court. The record before us suggests the possibility that there are such questions. Upon the whole, however, we have

concluded that the case cannot be disposed of on that theory, and we shall, accordingly, proceed to consider the reserved constitutional questions certified to this court in so far as that may be necessary.

The statute which is claimed to be unconstitutional is Article 2 of Chapter 22, Revised Statutes of 1931, being Sections 22-201 to 204, both inclusive. The first of these sections provides as follows:

"No member of the paid police department regularly organized and maintained by any city in this State whether such city is governed by general law or special charter, shall hereafter be removed, discharged or suspended; nor shall he be reduced in grade or in compensation except for cause arising out of the good of the service or the violation by such member of any law of the United States or of the State of Wyoming, or of any ordinance of such city. Such cause shall be stated in writing and a copy thereof shall be served upon the person affected who shall have the right within ten days of the service of such copy to answer the charges and to demand a public hearing before the city council or commission of such city. The written statement of cause together with any answer that may be made thereto shall be filed with the clerk of such city."

The next section provides that it shall be unlawful to remove, discharge or suspend any member of the police department in violation of the chapter and that any attempt to do so shall be without effect. Section 22-203 provides that any person who shall remove, discharge or suspend any such member of the police department or reduce him in grade without complying with the provisions shall be guilty of a misdemeanor and shall be subject to a fine of not less than $100 nor more than $500, or imprisonment in the county jail for a period of not less than one month nor more than six months or both, provided "that this act shall not affect any town or city having a population of less than 8,000." In other words, by this exception the act

is made applicable to all cities in the state which are governed by general law or by special charter, having a population of not less than 8,000.

The inquiry is as to whether or not the law above mentioned is in violation of Section 1, Article XIII of the Constitution, reading as follows:

"The legislature shall provide by general laws for the organization and classification of municipal corporations. The number of such classes shall not exceed four (4) and the powers of each class shall be defined by general laws, so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class. Cities and towns now existing under special charters or the general laws of the territory may abandon such charter and reorganize under the general laws of the state."

Other reserved questions are as to whether or not the law above mentioned is in conflict with Section 34 of Article I of the Constitution, providing that all laws of a general nature shall have a uniform operation, or in conflict with Section 27 of Article III of the Constitution, forbidding amendment of charters of cities and towns by special law where a general law can be made applicable; or in conflict with Section 35 of Article I of the Constitution, forbidding any law impairing the obligation of contracts, or in conflict with Section 1 of Article V of the Constitution, vesting the judicial power of the state in the courts thereof and in certain other bodies therein mentioned.

1. The legislature has not as yet seen fit to create, by general law, more than two classes of municipal corporations, namely, towns, which may be organized in any territory having not less than 150 population (with no maximum population mentioned), and cities of the first class, it being provided by Section 22-301, Rev. St. 1931, that "all cities having more than four thousand inhabitants shall be governed by the provi-

sions of this article, and be known as cities of the first class." Some of the cities of the first class, heretofore organized as such, are included in the legislative act in question, namely, Casper, Sheridan, and Rock Springs, but the act excludes all the cities of the first class between 4,000 and 8,000 population, and, at present, excludes the city of Rawlins. All the cities of this class, accordingly, do not have the same powers, and are not subject to the same restrictions, as specifically required by Section 1, Article XIII of the Constitution, and the act is therefore plainly in violation thereof at least as to this class of cities. State v. Sheldon, 29 Wyo. 233, 213 Pac. 92, 96. In that case it appears that a statute providing for the commission form of government was made applicable to towns having a population of 1,000 and over, excluding, accordingly, all towns have a less population. We said on that point:

"However, if it (the commission form of government) be undertaken to apply it to towns * * *, it would not operate uniformly throughout that class, but only upon those towns of more than 1,000 population to which we think it would grant powers not had by towns of less population in the same class, and this would be contrary to the provisions of Section 1 of Article XIII."

A like point was discussed in the case of Murnane v. City of St. Louis, 123 Mo. 279, 27 S. W. 711, 712. Missouri has a constitutional provision similar to that under discussion here. The general law provided the extent to which the cost of special improvements could be assessed against abutting property in cities of the first class. Thereafter the legislature undertook to change the law as to cities of that class having 300,000 population, and provided that in such cities the extent of such cost, assessable against abutting property, could be greater than in other cities of that class. The

court, in a lengthy opinion, held that the amending act was in conflict with a provision similar to that here under discussion, holding that the law was required to be not only a general law, but also a law in conformity with the constitutional provision already stated. "Assuming," said the court, "the act in question to be a general law, it plainly adds a new and additional class to those now defined in the general statute regulating the powers and government of cities of the first class * * *. So that, if this act were the law, there would be a direct breach of the constitutional command that all 'municipal corporations of the same class possess the same powers and be subject to the same restrictions.' "

That classification by population is reasonable can not be an excuse for violating the provision of the constitution above quoted. Nor can the fact that the larger cities in this state demanded the legislation. On that point the Supreme Court of Pennsylvania in Perkins v. Philadelphia, 156 Pa. St. 554, 27 A. 356, 361, after pointing out that hundreds of bills relating to municipalities had been vetoed and several scores of enactments had been held unconstitutional, said as follows:

"Another point made in the argument before us—that the public sentiment of Philadelphia with practical unanimity demanded the passage of this law, was doubtless more effectively urged before the Legislature. But the question presents itself to us in a different shape; we do not believe the intelligent public sentiment of the greatest city of the commonwealth demands the accomplishment of a lawful purpose by unlawful means; unconstitutional statutes are the very essence of lawlessness. Even if the unanimous public sentiment of the city demanded the enforcement of this act, we could not heed it. Public sentiment, properly, may move courts, in matters wholly discretionary, such as the adoption of rules to speed causes, afford quick relief to suitors, and eradicate abuses in the administration of justice; but such sentiment can have no place in the interpretation of a constitution; the public

sentiment expressed in that instrument is the only sentiment of which a court can take notice; it contains the deliberate, emphatically expressed sentiment of the whole people; they, and they alone, can change or amend it in the way provided in it, but even they cannot trample upon it. If laws in conflict with it be passed by the legislature, be approved by the governor, and sustained by this court, that is revolution. It is no less revolution because accomplished without great violence. It matters little to the house owner, whether the structure intended to shelter him be blown up by dynamite or the foundation be pried out, stone by stone, with a crowbar; in either case he is houseless. There can be no stability in a free government, if successful assaults in any department be made on the fundamental law;—the supreme law, deliberately established by the whole people as a rule of action in all governmental matters affecting their welfare."

We accordingly answer that the legislative act in question is in violation of Section 1 of Article XIII of the Constitution, in so far at least as cities operating under general laws are concerned.

2. But a law void in part is not necessarily void as a whole. 59 C. J. 639; 6 R. C. L. 121; State v. Sheldon, supra, and others of our cases. That rule, sometimes overlooked, is as well settled as the rule that the courts may declare a statute to be unconstitutional. We must, accordingly, direct our inquiry further and determine whether that is true in this case—whether, speaking specifically, the legislative act in question is also void as to cities operating under special charter, even though, as held in McGarvey v. Swan, 17 Wyo. 120, 96 Pac. 697, the provisions of uniformity contained in Section 1 of Article XIII, supra, do not relate to such cities. Before proceeding further, however, we should first state that the principle that the constitutionality of an act may not be raised by one not affected by the invalid part, does not apply when the entire act, by which he is affected, is rendered unconstitutional by

reason of the part which is void. 12 C. J. 764; State ex rel. v. Phillips, 70 Fla. 340, 70 So. 367, Ann Cas. 1928 A, 138.

The rule has been laid down that as to whether or not a legislative act shall be declared unconstitutional as a whole when a portion thereof is invalid depends primarily upon the intention of the legislature. 6 R. C. L. 123. In that rests the ultimate test. If the invalid portion is severable from the remainder, and constitutes but an incidental or unimportant part of the law, the remainder may stand, but if it is not severable, and the several parts are so interdependent that the main purpose of the law would fail by reason of the invalidity of a part, then the whole of the law must be declared invalid. 6 R. C. L. 124-127. The test of severability is, it would seem, but one of the rules guiding the courts in determining the intention of the legislature. That rule is not applicable here. Severability, at least in the sense of divisibility, is not applicable here. The law in question here deals with two or more classes. It may be effectually applied to one of these classes, and in fact in each of the cities contemplated by the act, without reference to any other. But the ultimate test, that of the intention of the legislature, still remains. No provision, however unobjectionable in itself, can stand, unless it appears that, standing alone, the provision can be given legal effect and that the legislature intended the unobjectionable feature to stand in case other provisions held bad should fail. Lynch v. United States, 292 U. S. 571, 54 Sup. Ct. 840, 846; Dorchy v. State of Kansas, 264 U. S. 286, 68 L. Ed. 686, 44 Sup. Ct. 323; C. M. & St. P. Ry. Co. v. Minneapolis, (D. C.) 238 Fed. 384; C. & N. W. Ry. Co. v. Commission, 280 Fed. 387. The ultimate test above stated is very general. Courts will not apply it arbitrarily, and it would, therefore, be desirable, if, so far as possible, we could have some subordinate rules

or tests by which the legislative intention could be determined. Attempts in that direction have been partially successful, although there must always remain a class of cases in which none but the ultimate test, applied with caution, will be the correct guide. It may be desirable to mention some of the subordinate rules or tests mentioned. The legislative act under consideration expressly includes cities organized under the general law as well as those operating under a special charter. In such case the presumption is, nothing in the act appearing to the contrary, that the legislature intended an act to be effective as an entirety. Williams v. Standard Oil Co., 278 U. S. 235, 73 L. Ed. 287; 49 Sup. Ct. 115; Riccio v. Hoboken, 69 N. J. L. 649, 662, 55 Atl. 1109, 1113; 63 L. R. A. 485; Danielly v. Princeton, 113 W. Va. 252, 167 S. E. 620; 59 C. J. 648. In the Hoboken case the court said:

"In seeking the legislative intent, the presumption is against any mutilation of a statute, and the courts will resort to elimination only where an unconstitutional provision is interjected into a statute otherwise valid, and is so independent and separable that its removal will leave the constitutional features and purposes of the act substantially unaffected by the process."

In case of doubt the statute must fall as a whole. Illinois C. R. Co. v. McKendree, 203 U. S. 514, 51 L. Ed. 298, 27 Sup. Ct. 153; El Paso etc R. Co. v. Guitierrez, 215 U. S. 87, 54 L. Ed. 106, 30 Sup. Ct. 21; Butts v. Transportation Co., 230 U. S. 126, 57 L. Ed. 1422, 33 Sup. Ct. 964; Springfield G. & E. Co. v. Springfield, 292 Ill. 236, 126 N. E. 739, 18 A. L. R. 929, affirmed 257 U. S. 66, 42 Sup. Ct. 24. We are not, however, at this time prepared to say that this should apply in a case in which it is doubtful whether or not any part of the law is unconstitutional. But that is not the case here. The presumption has not been treated as a strong one. Courts will also bear in mind, even in such

case, the rule that they will hesitate to declare an act unconstitutional. El Paso v. Guitierrez, supra. In some states the presumption does not seem to be applied. State ex rel. v. Phillips, 70 Fla. 340. And in some others it would probably have to give way, in the proper case, to the presumption, not applicable in the case at bar, that the legislature intended to legislate only concerning the subjects over which it had the power to do so. Further, if there is a statutory declaration, not present in the case at bar, as to the effect of partial invalidity, it will, as far as is reasonable, be given effect. 59 C. J. 647; State v. Ross, 31 Wyo. 500, 228 Pac. 636; Salt Creek Transportation Co. v. Public Service Commission, 37 Wyo. 488, 263 Pac. 621.

Courts have held in a variety of cases that a statute may be upheld as to one class embraced therein, but not as to another (6 R. C. L. 130; 1 Cooley's Constitutional Lim., 8th Ed., 366), and additional tests to arrive at the legislative intention may be gathered therefrom. A number of our own decisions belong to this class of cases. State v. Sheldon, 29 Wyo. 233, 213 Pac. 92; State ex rel v. Wyckoff, 31 Wyo. 500, 228 Pac. 636; Salt Creek Transportation Co. v. Public Service Commission, supra, and other cases. In two, namely, State ex rel. v. Wyckoff and the Salt Creek Transportation Company case, the legislature had declared that though part of an act should be invalid, the other parts should not be affected thereby. That rule is not, as already stated, applicable here. Moreover, it would seem that if an act is inherently wrong, so that it becomes substantially a positive duty of the legislature to legislate regarding it, a court can very well say that the legislature would have enacted a law as to one class, though it was beyond the power of the legislature to legislate as to another class, or though its enactment as to such other class might be unconstitutional for another reason. To this principle might be referred the Wyckoff

case, in which this court held that a law for the removal of officers could be upheld as to one class of officers, though it might be unconstitutional as to another, and the case of State v. Bevins, 210 Ia. 1031, 230 N. W. 865, in which the court held that a law against receiving deposits by a bank when insolvent could be upheld as to state banks, though it was invalid as to national banks. The Wyckoff case, again, was partially decided on the principle that the legislature would be presumed to legislate only on the subjects over which it has power. That rule, too, cannot be applied in the case at bar, for the reason that the legislature had full authority to legislate as to all cities, but it exercised that authority in an unlawful manner. Again it has been held that a law affecting classes of a diverse nature or condition may be valid as to one class, though not as to another. State v. Smart, 22 Wyo. 154, 136 Pac. 452; Milwaukee Industrial School v. Supervisors, 40 Wisc. 328; 6 R. C. L. 120, Sec. 129; State v. Sheldon, supra, also, comes within this principle, at least partially. That rule cannot be applied in the case at bar. No diversity of nature or condition is perceivable between the various cities embraced within the legislative enactment. Again, it has been held that the title of the act and the surrounding circumstances may be considered to determine the legislative intent. Spain v. R. Co., 151 Fed. 522. The title to the act in question made the act applicable to "any city in the state." That intent was carried out in Section 1 of the act. But the latter was amended in the Senate by the insertion of the provision that it should not apply to any town or city having less than 8,000 population. (Senate Journal 523, 534, 572.) This shows a distinct and deliberate intent on the part of the legislature in finally prescribing as to what cities it desired the act to apply. Elimination from the bill of some of the cities included in the title

would seem to indicate a definite intent to have it apply to all the remainder. It may be of interest in this connection to note that the bill was introduced by the "Natrona County Delegation," in which county is located Casper, a city of the first class, and embraced within the act as finally enacted. Is there any reason to believe, under these circumstances, that after the bill was amended as it was, it would have been adopted if all cities except cities under special charter only had been finally included within its scope? An affirmative answer is, we think, hardly a reasonable one.

Let us consider another phase in testing the probable intention of the legislature, namely, importance or unimportance of the invalid part in relation to the remainder. Minor details and unimportant parts, which are severable, will not, as already stated, if unconstitutional, ordinarily render the whole act void. Hale v. McGettigan, 114 Cal. 112, 45 Pac. 1049, 1052; Lowery v. Board, 140 N. C. 33, 52 S. E. 267. But if an invalid part was an inducing cause to the enactment of the law, the whole is invalid. Nor is it necessary that the invalid part should have operated as the sole inducement to the passage of the law. It will have that effect if the void part to any extent influenced the legislature in passing the statute. State v. Poynter, 59 Nebr. 417, 434, 81 N. W. 431, 435; Danielly v. Princeton, 113 W. Va. 252, 167 S. E. 620. It is also said that "the courts have frequently had occasion to decide that unconstitutional portions of general statutes are of sufficient importance to render the entire act unconstitutional." 6 R. C. L. 127. In harmonizing these statements, we cannot be far wrong in stating that when an act is void as to an important part, such part will itself often be considered by the courts, at least in connection with other circumstances, as an inducing cause for the enactment of the law, thus rendering the whole act invalid. See Chicago etc. R. R. Co. v. Sugar

Co., 162 Wisc. 374, 156 N. W. 607; State ex inf. v. R. Co., (Mo.) 19 S. W. (2d) 879. A good illustration of this principle may be found in Comanche L. & P. Co. v. Nix, 53 Okl. 220, 156 Pac. 293, and Wood & Co. v. Russell, 102 Okl. 92, 226 Pac. 1040. In the first of these cases a law provided for a gross revenue tax. It was held unconstitutional as to a large class of subjects embraced within the act, and it was therefore held to be unconstitutional as to all. But in the latter of these cases, a law providing for a license, invalid only as to a small portion, was upheld as to the remainder. Other cases involve, or have been decided on, the same principle. That is true, in part at least, of the case of State v. Sheldon, supra, in which we held that though a law was unconstitutional as to towns, it could be upheld as to cities of the first class. Brown v. Clark, (Wyo.) 34 P. (2d) 17, may be said to fall within that principle. We held in that case that a law abolishing judicial districts could not be declared void as a whole merely because it shortened the term of the judges thereof by a few days. The decision in that case, aside from the authorities therein cited, is further sustained by State ex rel. v. Ritzins, 164 Tenn. 259, 47 S. W. (2d) 558, and State v. Manry, (Tex. Comm. App.) 16 S. W. (2d) 809.

The subject of law enforcement, and the quality of the police force, is of equal importance in all the cities embraced within the act. Their situation and condition in that respect is not different. But the act, if upheld in part, could at most be applied to Cheyenne, and perhaps Laramie. The most important part of the act is clearly unconstitutional. Casper, Sheridan and Rock Springs, the greater number of cities contemplated in the act, are by reason of that fact excluded from its operation, and if we follow the foregoing authorities—and we have no reason not to do so—we must, we think, hold the entire act to be void.

Another important fact appears in the case at bar. Section 3 of the legislative act in question makes it a crime for any person who violates the provision of the act, and fixes a heavy penalty therefor. The act introduces a new policy into the state. The conditions in the various cities embraced in the act being the same, as stated, is it likely that the legislature had in mind that persons having control of the police force in Cheyenne and Laramie should be subject to this penalty, when persons similarly situated in Casper, Sheridan and Rock Springs should go scot free for doing the identical act? We think not. Section 3 is an integral part of the act. It is said in 6 R. C. L. 132, Sec. 131, that "courts incline towards treating a penal statute as void in its entirety whenever one section or clause is clearly unconstitutional." In State v. Cudahy Packing Company, 33 Mont. 179, 82 Pac. 833, 114 A. S. R. 804, a law was held invalid on account of a discriminative exemption proviso. Holding the whole law invalid, the court said:

"This case involves the construction of a statute highly penal. To such statutes the strict rule is to be applied—not so strict as to defeat the plain intent of the legislature, but so strict as to give the words of the statute the sense in which they are obviously used. * * * If applying this rule the legislative intent cannot be given effect, the particular law must fall. In other words, it must stand as enacted, or must be declared void as a whole. Wynehamer v. People, 13 N. Y. 378."

In Butts v. Transportation Company, 230 U. S. 126, 57 L. Ed. 1422, 33 Sup. Ct. 964, a congressional act was under consideration. That was an anti-discrimination statute, and had been held void in so far as Congress attempted to legislate as to the states. The question then was whether it should be held valid as to the District of Columbia and the high seas, as to which Congress had the power to legislate. The court, holding the law void in toto, said:

"The real question is whether the sections in question, being in part—by far the greater part—in excess of the power of Congress, are invalid in their entirety. Their words, as also those of the preamble, show that Congress proceeded upon the assumption that it could legislate, and was legislating, in respect of all persons and all places 'within the jurisdiction of the United States.' It recognized no occasion for any exception and made none. Its manifest purpose was to enact a law which would have a uniform operation wherever the jurisdiction of the United States extended. But the assumption was erroneous, and for that reason the purpose failed. Only by reason of the general words indicative of the intended uniformity can it be said that there was a purpose to embrace American vessels upon the high seas, the District of Columbia, and the territories. But how can the manifest purpose to establish a uniform law for the entire jurisdiction of the United States be converted into a purpose to create a law for only a small fraction of that jurisdiction? How can the use of general terms denoting an intention to exact a law which should be applicable alike in all places within that jurisdiction be said to indicate a purpose to make a law which should be applicable to a minor part of that jurisdiction and inapplicable to the major part? Besides, it is not to be forgotten that the intended law is both penal and criminal. Every act of discrimination within its terms is made an offense and misdemeanor, and for every such offense it gives to the aggrieved party a right to a penalty of $500, and subjects the offender to a fine of not less than $500 nor more than $1,000, or to imprisonment for not less than thirty days nor more than one year."

A number of previous decisions of the same court, exhibiting a similar situation and the same conclusion, are cited in that case. It is unnecessary to review them here. The Supreme Court of Arkansas in State ex rel. v. Dry Goods Co., 176 Ark. 324, 3 S. W. (2d) 340, came to a like conclusion as to a statute, containing a penal section, which required a property-statement, for the purpose of assessment for taxation, from all corporations. The act was held unconstitutional as to for-

eign corporations, and therefore void as a whole. The court said on that point:

"In the application of this well-settled rule to the case at bar, we are of the opinion that the statute is unconstitutional as to domestic corporations. It will be observed that the language of the act refers to all corporations. If it had contained separate sections concerning foreign corporations and domestic corporations, it might be said that the statute was separable, and the unconstitutional part as to foreign corporations might be stricken out and leave enforceable that part relating to domestic corporations. Such is not the case, however. The language is plain, and refers to all corporations. The act prescribed a severe penalty for the failure of the officer of the corporation to comply with its terms. To sustain the act as to domestic corporations would require us to strike out the words 'all corporations,' and to disregard their plain and ordinary meaning, and substitute therefor the words 'domestic corporations.' To limit the statute in this manner would require us to amend the statute, and, as has been said, this is no part of our duty. It is our duty to interpret the statute as it is written, and we cannot limit or restrict the plain meaning of the words used so as to make constitutional a statute which, when construed according to the plain and ordinary meaning of the language used, would be unconstitutional."

See further North Tintic Mining Co. v. Crockett, 75 Ut. 259, 284 Pac. 328; Cella Com. Co. v. Bohlinger, 147 Fed. 419, 78 C. C. A. 467, 8 L. R. A. N. S. 537 (which, perhaps, goes too far); 6 R. C. L. 130; 59 C. J. 646.

Applying the foregoing rules, we cannot escape the conclusion that the whole act under consideration is void because in violation of Sec. 1, Article XIII of our Constitution. This obviates the necessity of answering the other constitutional questions submitted to us; for instance, as to whether or not, as applied to Cheyenne, the act is a local law or would be of uniform operation, a point considered in McGarvey v. Swan, 17 Wyo. 120, 96 Pac. 697. Counsel for the plaintiff believes that that

case is decisive herein. But it has no application here. No question of partial invalidity of a law arose or was considered therein.

The case will, accordingly, be remanded to the district court of Laramie County, with one of the questions answered as above set forth, and with the remaining questions left unanswered.

KIMBALL, Ch. J., and RINER, J., concur.