THE STATE EX INF. SAM S. HALEY, Prosecuting Attorney, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.—19 S. W. (2d) 879.

Division Two, August 6, 1929.

*Montgomery, Rucker & Hayes* for appellant.

*D. W. Peters* for respondent.

HENWOOD, C.—On February 19, 1926, an information was filed in the Circuit Court of Cole County, charging the defendant with the unlawful use and operation of a certain caboose car, and demanding that a penalty be assessed against the defendant, under Sections 10079 and 10080, Laws 1923, p. 310. The State elected to proceed under the criminal code, as provided in Section 3708, Revised Statutes 1919, and upon a trial before the court, a jury being waived, the defendant was found guilty and its punishment assessed at a fine of $100. Judgment was rendered accordingly, and the defendant was granted an appeal to this court, constitutional questions being involved.

The information, omitting formal parts, is in the following form:

"Comes now Sam S. Haley, the duly elected, qualified and acting Prosecuting Attorney of Cole County, Missouri, and informs the court that this action is brought for and on behalf of the State of Missouri, and that on the 16th day of February, 1926, at the County of Cole and State aforesaid, the Missouri Pacific Railroad Company was a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, and was on said date engaged in operating a line of railroad from the city of St. Louis to Kansas City, through Cole County, in said State; that on said day, the defendant did, unlawfully and wrongfully, use and operate a

certain caboose car No. 653 on its line of railway through Cole County, Missouri, *which was not provided with end platforms equipped with guardrails, grab irons, steps for the safety of persons getting on and off of said car, and without riser and skirt boards at the sides and back thereof;* all of which said equipment the defendant was required by law to have upon said caboose car, and that the operation of said caboose car without said equipment was in violation of the provisions of Section 10079, as amended, Laws of Missouri 1923 at pages 309, 310 and 311.

"Wherefore, informant, the Prosecuting Attorney of Cole County, says that a cause of action has accrued to the State of Missouri to have and demand of and from the defendant as a penalty for the neglect of the provisions of said law the sum of $500, to be paid to the State of Missouri, for which informant asks judgment." (Our italics.)

Sections 10079 and 10080 of the Act of 1923, upon which this proceeding or prosecution is based, read as follows:

"Sec. 10079.—From and after the first day of September, 1925, it shall be unlawful for any person, persons, partnership, or corporation, while operating within the State of Missouri *any railroad or railway in whole or in part within said state,* either as owner, lessee, or receiver, *to require or permit the use of any caboose cars in any commerce, traffic, transportation or intercourse between two or more points or places wholly within this state,* unless said caboose cars shall be at least twenty-eight (28) feet in length, exclusive of the platforms, and equipped with two four-wheeled trucks, and said caboose cars shall have steel under-frames on all trains where a pusher engine is used. And be of constructive strength equal to that of the 60,000-pound capacity freight car, and shall be provided with a door at each end thereof and *an outside platform across each end of said car.* Each platform shall be not less than thirty (30) inches in width, and shall be equipped with proper *guardrails, grab irons and steps for the safety of persons getting on and off of said car.* Said steps shall be equipped with a suitable tread, *riser and skirt boards at the sides and back thereof,* properly designed to prevent slipping from said steps. Said caboose cars shall have suitable cupolas, and necessary closets, toilet and windows. (Our italics.)

"Sec. 10080.—Any person, persons, partnership, or corporation, while operating within said state, either as owner, lessee, or receiver, *any railroad or railway in whole or in part within said state,* as stated in section 10079, and violating any of the provisions of section 10079, shall, as to each caboose car required or permitted to be used in violation of the provisions of said section 10079, be liable to the State of Missouri in a penalty of not less than one hundred nor

more than five hundred dollars for each offense, and such penalty shall be recovered, and suit therefor shall be brought in the name of the State of Missouri, by the attorney-general, or under his direction, in any court of competent jurisdiction in any county in said state into or through which such railroad or railway may run or be operated, or by the prosecuting attorney of any county in said state through, or into, or out of which such railroad or railway may run or be operated, or by the circuit attorney in the city of St. Louis. It shall be the duty of the public service commission to enforce the provisions of this act and to report the violations of any of the provisions of section 10079 to the attorney-general or the prosecuting attorney of any county wherein the violation occurred.'' (Our italics.)

The case was submitted on the following agreed statement of facts:

''It is stipulated and agreed by and between the State of Missouri and the Missouri Pacific Railroad Company that Sam S. Haley is the duly elected, qualified and acting Prosecuting Attorney of Cole County, Missouri; that the Missouri Pacific Railroad was a corporation duly organized and existing under and by virtue of the laws of the State of Missouri on the 16th day of February, 1926, and was engaged in operating a line of railroad from the city of St. Louis to Kansas City, through Cole County, in said State, on said date, and that on said day it used and operated a certain caboose car No. 653 on its line of railway through Cole County, Missouri, *which was not equipped with guard rails, steps or platform at either end thereof;* and *that the Missouri Pacific Railroad is a railroad engaged in interstate commerce.''* (Our italics.)

I. In its motion to quash the information, demurrer to the evidence and motion for a new trial, the defendant challenged the constitutionality of the statute involved here on various grounds. Its chief contention is that Congress, by the Safety Appliance Act of 1893 and supplemental acts, has exercised its power to regulate the construction and equipment of caboose cars used by railroads engaged in interstate commerce, in pursuance of its power to regulate commerce among the several states (Sec. 8, Art. I, U. S. Constitution), and that the several states are thereby precluded from legislating on that subject. Counsel for the State says, in his brief: ''The only question in this case, is as to whether or not the Congress, in the exercise of its power under Section 8 of Article I of the Constitution of the United States, by the enactment of the Safety Appliance Act, has so far invaded this field of regulation, as to preclude the State of Missouri from prescribing the manner in which caboose cars operated in this State shall be equipped.''

The Interstate Commerce Commission, in its Order of March 13, 1911, relating to appliances provided for in Section 4 of the original Safety Appliance Act of 1893 (27 U. S. Stat. 531) and Section 2 of the Act of 1910 (36 U. S. Stat. 298), specified in detail how "Caboose Cars With Platforms" and "Caboose Cars Without Platforms" shall be constructed and equipped. [See 2 Roberts' Federal Liabilities of Carriers (2 Ed.) pp. 2010, and 2028 to 2034.] And the Supreme Court of the United States has expressly held that the Interstate Commerce Commission may make and promulgate regulations as to the construction and equipment of cars used by railroads engaged in interstate commerce, under the authority given the Commission in the Safety Appliance Acts of Congress. [St. L. & I. M. Ry. Co. v. Taylor, 210 U. S. 281.]

In dealing with a statute of Pennsylvania, which provided that the rear cars of mail and express trains should be equipped with certain platforms, guard rails and steps, Justice HOLMES says:

"When the United States has exercised its exclusive powers over interstate commerce so far as to take possession of the field, the States no more can supplement its requirements than they can annul them. In the present instance the rules for the construction of mail cars, admitted to be valid, not only exclude the wide platform, but provide an equipment for them when used as end cars. The Safety Appliance Act with its careful requirements for the safety of the men was followed by most elaborate regulations issued by the Interstate Commerce Commission which include three large pages of prescriptions for 'Caboose Cars Without Platforms.' Caboose cars constantly are used as end cars and these pages, like the Post Office order as to mail cars, recognize the lawfulness of an end car such as the Pennsylvania statute forbids.

"The question whether Congress and its commissions acting under it have so far exercised the exclusive jurisdiction that belongs to it as to exclude the State, must be answered by a judgment upon the particular case. The subject-matter in this instance is peculiarly one that calls for uniform law and in our opinion regulation by the paramount authority has gone so far that the statute of Pennsylvania cannot impose the additional obligation in issue here." [Penna. Railroad Co. v. Pub. Service Comm., 250 U. S. 1. c. 569.]

In holding that the Safety Appliance Act superseded an Indiana statute, which required railway companies to place secure grab-irons on the sides or ends of every railroad car, Justice LAMAR said:

"Congress could pass the Safety Appliance Act only because of the fact that the equipment of cars moving on interstate roads was a regulation of interstate commerce. Under the Constitution the nature of that power is such that when exercised it is exclusive, and

*ipso facto,* supersedes existing state legislation on the same subject.
. . . The test, however, is not whether the state legislation is in
conflict with the details of the Federal law or supplements it, but
whether the State had any jurisdiction of a subject over which Con-
gress had exerted its exclusive control." [Southern Ry. Co. v.
Railroad Comm. of Indiana, 236 U. S. 1. c. 446, 448.]

As said in the early case of Prigg v. Commonwealth of Pennsyl-
vania, 16 Pet. 539, 617: "If Congress have a constitutional power
to regulate a particular subject, and they do actually regulate it in
a given manner, and in a certain form, it cannot be that the state leg-
islatures have a right to interfere; and, as it were, by way of com-
pliment to the legislation of Congress, to prescribe additional regu-
lations, and what they may deem auxiliary provisions for the same
purpose. In such a case, the legislation of Congress, in what it does
prescribe, manifestly indicates that it does not intend that there shall
be any farther legislation to act upon the subject-matter. Its silence
as to what it does not do, is as expressive of what its intention is as
the direct provisions made by it. . . . The will of Congress upon
the whole subject is as clearly established by what it had not de-
clared, as by what it has expressed."

This court has given full recognition to this well-settled doctrine
in numerous cases, in passing upon the constitutionality of statutes
affecting interstate commerce. [See State v. Railroad, 212 Mo. 658,
111 S. W. 500; Thompson v. Railroad, 262 Mo. 468, 171 S. W. 364;
Sells v. Railroad, 266 Mo. 155, 181 S. W. 106.] In Thompson v. Rail-
road, supra, Judge LAMM, in a separate concurring opinion, wrote
the following: (1. c. 490) "That when the Congress of the United
States, under its constitutional power of regulating interstate com-
merce, has occupied the field by its statute, the State damage act
must give way, *pro tanto,* where the two overlap in remedy, is not
to be questioned for a moment. However much the State bench
and bar may revere the old landmarks of our statute on damages,
they must be willing to see that statute yield when the paramount
authority of the Federal Government once takes over any phase of
the regulation of interstate commerce and the liability of carriers
in that line of business, as it has been done in this instance."

In this connection, see also, Cooley's Const. Lim. (7 Ed.) p.
856; Southern Ry. Co. v. United States, 222 U. S. 20; C. R. I. & P.
Ry. Co. v. Hardwick Elevator Co., 226 U. S. 426; cases cited in
Southern Ry. Co. v. Railroad Comm. of Indiana, supra, and Penna.
Railroad Co. v. Pub. Service Comm., supra.

In support of the statute now under consideration, the State re-
lies chiefly on the ruling in the case of Atlantic Coast Line v.
Georgia, 234 U. S. 280. In that case, the Georgia statute in issue re-

quired all railroad engines to be equipped with electric headlights, and the statute was upheld. But, the court in so holding made perfectly clear the distinction between the situation in that case and the cases cited above. Referring to various provisions of the Safety Appliance Acts relating to engines, the writer of the opinion said: (1. c. 293, 294): "It is manifest that none of these acts provides regulations for locomotive headlights. . . . It does not appear, . . . either that Congress has acted or that the Commission under the authority of Congress has established any regulation so far as headlights are concerned. As to these, the situation has not been altered by any exertion of Federal power and the case stands as it has always stood without regulation unless it be supplied by local authority." This distinction is pointed out in the later case of Southern Ry. Co. v. Railroad Comm. of Indiana, supra, 1. c. 446.

The statute in issue here prohibits "the use of *any caboose cars in any commerce, traffic, transportation or intercourse* between two or more points or places wholly within this State," on *"any railroad or railway in whole or in part within this State,"* unless said caboose cars shall be constructed and equipped as therein prescribed; and said specifications include, among other things, *end platforms equipped with guardrails, grab irons, and steps with riser and skirt boards at the sides and back thereof*. The Interstate Commerce Commission's Order of March 13, 1911, made in pursuance of the Safety Appliance Acts of 1893 and 1910, fixed the standard of construction and equipment of "Caboose Cars With Platforms" and of "Caboose Cars Without Platforms." And it has been held that the Safety Appliance Acts of Congress are "intended to embrace all locomotives, cars and similar vehicles *used on any railroad which is a highway of interstate commerce"* (Our italics). [Southern Ry. Co. v. United States, 222 U. S. 1. c. 26.] Therefore, the defendant railroad company, being engaged in interstate commerce, cannot be held to account for its failure to comply with legislation of this State relating to the construction and equipment of caboose cars. The statute in question does not discriminate between caboose cars used by railroad companies engaged exclusively in intrastate commerce and caboose cars used by railroad companies engaged in both intrastate and interstate commerce. In undertaking to provide how caboose cars used by railroad companies engaged in interstate commerce shall be constructed and equipped, the State of Missouri has invaded a field of regulation over which Congress has exercised its exclusive control; and, in undertaking to prohibit the use of caboose cars without platforms by railroad companies engaged in interstate commerce, the State of Misssouri has enacted a statute which is in direct conflict with the Safety Appliance Acts of Congress and the regulations of

the Interstate Commerce Commission made in pursuance thereof, the use of caboose cars without platforms being expressly authorized thereby. As we have already indicated, this statute is wholly ineffectual as to the construction and equipment of caboose cars used by railroad companies engaged in interstate commerce, because Congress has taken over that field of regulation. But, its ineffectuality does not stop there. Being so drawn as not to distinguish between interstate and intrastate commerce, it cannot stand as legislation affecting intrastate commerce alone. Its provisions are interdependent and inseparable, and it must stand or fall as a whole. Accordingly, it must be held to be unconstitutional and void. There has ever been a conspicuous effort of our courts, both Federal and State, to preserve unimpaired the preclusive Federal power to regulate commerce among the several states and at the same time to preserve unimpaired the power of the several states to regulate their own internal affairs. [The Employers' Liability Cases (Howard v. Railroad and Brooks v. Railroad), 207 U. S. 463; State v. Railroad, 212 Mo. 658, 111 S. W. 500.] If this Missouri statute represents a real necessity for the protection of railroad trainmen, doubtless steps will be taken to meet the need by a change in the present Federal regulations.

II. In view of the conclusion announced above, it becomes unnecessary to consider other questions presented in the briefs and oral arguments of counsel.

The judgment is reversed, and the defendant discharged. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.