Keith **BERRY** et al., Plaintiffs,

v.

**ARAPAHOE AND SHOSHONE TRIBES** and the Joint Business Council of the Arapahoe and Shoshone Tribes, Defendants.

**No. C75–164–B.**

United States District Court, D. Wyoming.

Oct. 8, 1976.

John R. Hursh and Christopher A. Crofts, Riverton, Wyo., for plaintiffs.

Marvin J. Sonosky, Washington, D.C., for defendant Shoshone Tribe.

R. Anthony Rogers, Washington, D.C., for defendant Arapahoe Tribe.

George F. Guy, Cheyenne, Wyo., for defendants Shoshone and Arapahoe Tribes.

## MEMORANDUM OPINION

BRIMMER, District Judge.

Early in 1974, Keith and Karen Berry, the plaintiffs herein, became interested in a piece of property known as the Bull Lake Lodge. Bull Lake Lodge sits upon approximately twenty-three (23) acres of deeded land along U.S. Highways Nos. 26–287 in Fremont County, Wyoming, within the exterior boundaries of the Wind River Indian Reservation. The complex consists of a lodge, cafe, and a number of cabins designed primarily to provide services for tourists who travel in the area during the summer months. The lodge has been in existence for a number of years but its profitability as a business venture has been marginal.

The Berrys were advised, when they expressed an interest in the place, to investigate the possibilities of obtaining liquor licenses in order to enhance the potential of the business. Thereafter, the Berrys in the summer of 1974 proceeded to obtain the necessary application forms from the county commissioners of Fremont County for a county liquor permit. However, prior to submitting an application to the county commissioners, the Berrys approached the Joint Business Council of the defendant tribes to discuss the possibility of obtaining a tribal liquor license for the lodge. The Berrys were advised by the Joint Business Council of the defendant tribes to wait before filing their application for the county liquor license until matters raised by the dispute in *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), had been finally determined. The plaintiffs also discussed their interest in a tribal liquor license with at least one member of the business council who indicated no impediment to issuance of such license.

In the spring of 1975, the Berrys acquired a county liquor license from the Fremont County commissioners and applied for a tribal liquor license. On May 2, 1975, plaintiffs appeared before the Joint Business Council of the Shoshone and Arapahoe tribes at which time they presented their application for a tribal liquor license. The hearing was conducted in a rather informal manner. Mr. Berry was asked to present his position and to answer questions posed to him by members of the Joint Business Council. At the conclusion of his presentation, the chairman excused Mr. Berry from the meeting. Testimony as to this matter is in conflict, with Mr. Berry contending that he was being excused from the presence of the council and not just from giving further testimony. In any event, Mr. and Mrs. Berry left the chambers while the Joint Business Council heard protests against the granting of their application. Although the Berrys were not present during the time in which protests were heard, the rest of the hearing was recorded and transcribed and subsequently made available to them. The transcript reveals that the protests were not directed against the Berrys personally or against the Bull Lake Lodge location; rather, the basis for the protest was a general concern among members of the tribes and the council with the issuance of any additional licenses because of the alcohol abuse problems present on the reservation.

As a result of the hearing, the Berrys' application for a tribal liquor license was denied, and the Berrys were notified, by letter dated May 5th, 1975, of the Joint Business Council's action. On June 19, 1975, Mr. Berry requested in writing a rehearing before the Joint Business Council. The request was denied on July 11th, 1975, and this lawsuit followed.

The plaintiffs have alleged three causes of action in their Complaint. The First Cause of Action seeks a declaratory judgment as to the rights and status of the

parties, the extent of tribal jurisdiction over Bull Lake Lodge and the plaintiffs, and the authority of the defendants to require a tribal liquor license within the context of 18 U.S.C. Section 1161 and 18 U.S.C. Section 1154(c). The plaintiffs contend that their deeded lands and the population patterns within the surrounding area constitute a "non-Indian community" within the Indian country and place them outside the authority of the tribal government as defined in 18 U.S.C. Section 1154(c). The plaintiffs also contend that the extension of tribal governmental police powers to them as non-Indians and to their deeded lands violate the due process and equal protection requirements under 25 U.S.C. Section 1302(8).

The plaintiffs' Second Cause of Action seeks a review of the record and the proceedings of the May 2nd, 1975 hearing and subsequent denial of the plaintiffs' application for a tribal liquor license. Specifically, the plaintiffs contend that the hearing failed to meet the requirements of due process and equal protection required by 25 U.S.C. Section 1302(8).

The plaintiffs' Third Cause of Action is for damages allegedly incurred as a result of the defendants' failure to accord them due process and equal protection. Plaintiffs contend that as a result of the defendant council's action the fair market value of their property has been reduced from approximately $100,000.00 to approximately $30,000.00. In addition, the plaintiffs contend that the actual, present capitalized loss to the property and business because of the denial of a tribal liquor license is $53,496.00. Finally, the plaintiffs also contend that over a five year period, when reduced to present value, the lodge will incur lost profits in the amount of $39,441.00.

The plaintiffs' three causes of action are based primarily upon the provisions of the so-called Indian Civil Rights Act, 25 U.S.C. Section 1302(8), which reads in pertinent part as follows:

"No Indian tribe in exercising powers of self government shall . . .

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law."

The plaintiffs further contend that this Court has original jurisdiction over this suit under the provisions of 28 U.S.C. Section 1343(4) which grants jurisdiction to the District Court over "any civil action authorized by law to be commenced by any person . . . under any Act of Congress providing for the protection of civil rights."

In their answer the defendants first contend that the Court is without jurisdiction, because the Declaratory Judgment Act under which the plaintiffs seek relief confers no jurisdiction upon the District Courts, the Administrative Procedure Act under which the plaintiffs seek judicial review of the hearing on their application confers no jurisdiction upon the Court, Section 1331, Title 28 U.S.C. confers no jurisdiction upon the Court and Section 1302 confers no jurisdiction upon the Court. The defendants also contend that Section 1302(8) does not permit this suit by non-Indians. The defendants also deny the plaintiffs' contention that Bull Lake Lodge is a non-Indian community within Indian country which is not subject to the requirements of first obtaining a tribal liquor license before selling alcoholic beverages within the exterior boundaries of the reservation.

The defendants deny the plaintiffs' allegation that the council's rejection of their application was a denial of due process and equal protection and assert that the plaintiffs are not entitled to due process or equal protection of the law because they had no initial right to an original license and, thus, had no interest subject to the protection of procedural due process. The defendants also contend that whatever the business was before the application for the license was denied is still there and that the denial did not impair that business. They further contend that, since the business had no liquor license when the Berrys purchased it, the denial of the tribal license resulted in no loss of property to the plaintiffs, since they could not be deprived of what they did not

have. Finally, the defendants contend that, assuming the plaintiffs had a property interest, they were, nonetheless, not denied equal protection of the law or due process in that notice of a hearing was given, a hearing was had at which the plaintiffs were allowed to appear and to present their case, and the results of that hearing were duly recorded and transcribed. Moreover, the defendants contend there was no denial of equal protection because, in addition to the Berrys' application, all other applications for initial licenses were denied.

The defendants also deny the plaintiffs' cause of action for damages, contending that the tribes are immune from a money judgment on the general principle that political entities, and officials exercising governmental functions are not liable for money damages even if they have acted wrongly, and also contending that even if the plaintiffs were entitled to damages, they have failed to support that claim through the introduction of competent evidence. Defendants further contend that the plaintiffs are not entitled to damages merely because their expectation of receiving a tribal liquor license was not realized.

### Jurisdiction

■ That this Court has jurisdiction both of the subject matter of this suit and of the parties is well-settled in this circuit. *Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926 (10th Cir. 1975). The Indian Civil Rights Act, 25 U.S.C. Section 1302, upon which plaintiffs rely primarily for their cause of action furnishes a jurisdictional basis which permits this Court to entertain this case, and 28 U.S.C. Section 1343(4) provides a remedy in this Court for the prosecution of alleged deprivations of equal protection and due process under Section 1302(8). *Dry Creek Lodge, Inc. v. United States, supra,* at 933; *Crowe v. Eastern*

*Band of Cherokee Indians, Inc.,* 506 F.2d 1231 (4th Cir. 1974); *Thompson v. Tonasket,* 487 F.2d 316 (9th Cir. 1973); *Brown v. United States,* 486 F.2d 658 (8th Cir. 1973). The plaintiffs being non-Indians does not preclude them from asserting a claim under the provisions of 25 U.S.C. Section 1302(8). *Dry Creek Lodge, Inc. v. United States, supra; Dodge v. Nakai,* 298 F.Supp. 17 (D.Ariz.1968); *Hickey v. Crow Creek Housing Authority,* 379 F.Supp. 1002 (D.S.D. 1974). Finally, the members of the joint council are subject to suit brought under the provisions of Section 1302 in that the enactment of the Indian Civil Rights Act constitutes a waiver by Congress of tribal immunity as to suits brought under its provisions. *Dry Creek Lodge, Inc. v. United States, supra; Johnson v. Lower Elwha Tribal Community,* 484 F.2d 200 (9th Cir. 1973); *McCurdy v. Steele,* 353 F.Supp. 629 (D.Utah 1973).

### Necessity of a Tribal License

■ Prior to 1953 it was unlawful for anyone to introduce or attempt to introduce any malt, spiritous or vinous liquor including beer, ale and wine or any ardent or intoxicating liquor of any kind whatsoever into Indian country; however, the term "Indian country" did not include fee patented lands in non-Indian communities. 18 U.S.C. Section 1154(a), (c). Since 1953 this prohibition has been modified so that liquor or other alcoholic beverages may be sold in Indian country provided that such sale or transaction conforms both with the liquor laws of the state in which the act occurs and with any ordinance duly adopted by the tribe having jurisdiction over the particular area of Indian country. 18 U.S.C. Section 1161. Responding to this option provided by federal law, the Joint Business Council of the Shoshone and Arapahoe Tribes adopted Ordinance No. 26[1] which required

1. This ordinance was adopted by the defendant tribes in February, 1971, was subsequently certified by the Secretary of the Interior and published in the Federal Register. 37 Fed.Reg. 1253–1254 (Jan. 27, 1972). The authority of the tribes to require a tribal liquor license under the provisions of 18 U.S.C. Section 1161

and the validity of this ordinance were upheld by the United States Supreme Court in *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). The ordinance itself consists of eight sections, of which Section 3 requires a tribal license and reads as follows:

that retail liquor outlets within Indian country obtain both tribal and state licenses prior to the sale of any alcoholic beverage on the Wind River Reservation. Although Bull Lake Lodge lies within the exterior boundaries of the Wind River Reservation, the plaintiffs contend that their deeded land, together with an area within a radius of three miles of the lodge, is inhabited entirely by non-Indians and is, therefore, a non-Indian community within Indian country and outside the reach of tribal governmental jurisdiction as defined in 18 U.S.C. Sections 1154(c), 1161.

*Webster's New Collegiate Dictionary*, (1975) defines a community as "a unified body of individuals . . . with common interests living in a particular area; . . an interacting population of various kinds of individuals in a common location." The evidence revealed that the lodge property itself consists of six or eight cabins, the main lodge, a dining room, living quarters, facilities for ten permanent trailer camp hookups, corrals and various outbuildings. Immediately across the road from the lodge is a gas station with an attached residence which is occupied by a husband and wife, and to the north of the lodge on a contiguous two acre tract is a separate house occupied by two residents. Although the population of the lodge may swell to seventy or seventy-five persons during the summer, almost all of whom are non-Indians and tourists, the lodge area itself is called home by only seven people, which figure includes the members of the Berry family together with one or two employees.

The plaintiffs urge that these facts, together with the fact that the specific area within a radius of three miles of Bull Lake Lodge is inhabited entirely by non-Indians, are sufficient to constitute a non-Indian community within Indian country. However, there are Indians residing within a

radius of five miles of the lodge, the nearest community of any size, namely Riverton, Wyoming, is thirty miles to the east, and the Bull Lake Lodge area is essentially rural in character and without schools, churches, police department, fire department or even a community hall. It has historically been subject to the jurisdiction of the tribes and the federal government, and has been regarded by the parties and the public as a part of the reservation. Under these circumstances it is doubtful if Bull Lake Lodge is really a community within the commonly accepted meaning of that term. More accurately, Bull Lake Lodge is a place of business, mostly for non-Indian tourists on a main highway, out in the country, on an Indian Reservation over which the defendant tribes have jurisdiction. Under these circumstances Bull Lake Lodge cannot be said to be a non-Indian community within Indian country and it is necessary that the plaintiffs hold both a state liquor license in conformity with state law and a tribal liquor license in conformity with Ordinance No. 26. 18 U.S.C. Section 1161; *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).

## The Due Process and Equal Protection Question

Having concluded that the plaintiffs may not lawfully sell or dispense intoxicating liquors at or from the lodge without first obtaining a tribal liquor license as required by 18 U.S.C. Section 1161 and Ordinance No. 26, it is necessary next to consider the plaintiffs' contention that the hearing of May 2, 1975, which resulted in the denial of the plaintiffs' application for a tribal liquor license, did not comply with the fundamental principals of equal protection and due process.

 The requirements of procedural due process are applicable only upon a

Section 3. *Tribal license required.* No person shall engage in the sale of intoxicating beverages within Indian country under the jurisdiction of the Tribes unless duly licensed by the Tribes and, in the case of non-Indians, by the Tribes and the State of Wyoming, except that this Ordinance shall not apply to

any licensee under the laws of the State of Wyoming on the effective date of this Ordinance, until the expiration of the annual term of any such license, provided that the Tribes, in the discretion of the Joint Business Council, may require individual Indians to obtain licenses from the State.

showing by the plaintiffs that protected liberty or property interests have been affected. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Such interests are not created by the constitution but are created by some independent source such as a statute or ordinance. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). The range of protectable interests is not infinite, and before a determination can be made of the nature of the hearing which may be required, the nature of the interests at stake must first be determined. *Board of Regents v. Roth, supra.*

The tribes have adopted Tribal Ordinance No. 26 under the option granted to them by Congress in 18 U.S.C. Section 1161, which permits the introduction of intoxicants into Indian country if the "act or transaction is in conformity with the laws of the state . . . and with (the Tribal) ordinance. . . ." Tribal Ordinance No. 26 makes no reference to the creation of or the nature of any property right or interest which may arise or exist in an applicant, and federal law simply does not deal with the subject.

■ In order to determine whether the plaintiffs have a property interest which is entitled to the protections of due process or whether they hold merely an expectation, it is necessary to determine the nature of their interest in light of the laws of the State of Wyoming. *Page v. Jackson,* 398 F.Supp. 263 (N.D.Ga.1975). Under Wyoming law a liquor license is deemed a privilege. Section 12–13 Wyoming Statutes (1957). There is no inherent right in Wyoming in a citizen or anyone else to sell intoxicating liquors; there is no vested right in any person to have a liquor license; and the power of the lawmaker to prohibit or regulate the sale of alcoholic beverages is practically unlimited. *State ex rel. Noble v. City Council of City of Cheyenne,* 7 Wyo. 417, 52 P. 975 (1898); *State ex rel. Jones v. Bd. of Comm. of Natrona County,* 18 Wyo. 153, 105 P. 295 (1909); *Whitesides v. Council of City of Cheyenne,* 78 Wyo. 80, 319 P.2d 520 (1957).

■ However, the distinction between "rights" and "privileges" in light of recent decisions, is largely anachronistic. Consideration of the issue whether or not the plaintiffs herein have been denied equal protection and due process cannot end with the state's formalized characterization of an nterest as a mere privilege. *Page v. Jackson, supra.* While one has no "right" to sell liquor in the sense that the State or, in this case, the tribes may prohibit its sale altogether, he may nevertheless have a right to fair treatment when officials grant or deny his application for a liquor license. 1 Davis, *Administrative Law Treatise* Section 7.12, at 456 (1958). "(The 'right—privilege' dichotomy) has been not only diminished but extinguished. In place of the privilege concept, the law of the 1970's recognizes that some interests are deserving of less procedural protection than others." Davis, *Administrative Law of the 70's: Supplementing Administrative Law Treatise,* Section 7.00, at 241 (1976). As Mr. Justice Stewart said for the United States Supreme Court in *Board of Regents v. Roth, supra,* 408 U.S. at 571–572, 92 S.Ct. at 2706:

> "(T)he Court has fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights. . . . Yet, while the Court has eschewed rigid or formalistic limitations on the protection of procedural due process, it has at the same time observed certain boundaries. For the words 'liberty' and 'property' in the due process clause of the Fourteenth Amendment must be give some meaning."

■ Thus, in order for the plaintiffs to have a property interest in a tribal liquor license, they must have more than an abstract need or desire for it, or a unilateral expectation of it. *Board of Regents v. Roth, supra.* If the benefits that the plaintiffs hope to derive from the acquisition of a tribal liquor license are to be construed as a property interest for due process purposes, there must exist such statutes, rules or mutually explicit understandings which will give support to their claim of entitle-

ment to the benefit they seek. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

▇ It cannot fairly be said that tribal Ordinance No. 26 contains either an express or reasonably to be implied provision which would create a benefit in the plaintiffs as initial applicants for a tribal liquor license which is protectable under a due process argument. Nor can such a position be supported by reliance upon Wyoming state law, for the law of the State of Wyoming is abundantly clear that there is no vested right in any person to have a liquor license. *State ex rel. Noble v. City Council of City of Cheyenne, supra.*

However, plaintiffs argue that a protectable interest in the benefit which they hope to derive from the issuance of a tribal liquor license accrues to them because of certain assurances or mutually explicit understandings between them and some individual members of the Joint Business Council. Whether or not assurances were made to the plaintiffs that they would have no problems in obtaining a tribal liquor license is in conflict; however, even if the evidence is viewed in a light most favorable to the plaintiffs, it cannot be said that such assurances gave rise to a benefit protectable under the due process provision of 25 U.S.C. Section 1302(8).

By the plaintiffs' own testimony, such assurances were made by no more than one or two members of the Joint Business Council. Furthermore, there is no evidence that such assurances, if made, constituted a formal action by the Joint Business Council as a body politic. In the second place the application was not formally before the members of the Joint Business Council in 1974, and subsequent elections in November, 1974, together with two later resignations, resulted in a significant change in membership on the Joint Business Council, so that only three of the eleven councilmen who were present at the 1974 meeting were present on May 2, 1975 when the hearing on the application of Bull Lake Lodge for a tribal liquor permit was held and the permit was denied. Whatever assurances might have been made at a meeting held in July, 1974, it is axiomatic that any promise or assurance privately made by one or two individuals on that board will not bind it, and certainly will not bind newly elected members of a subsequent board. That plaintiffs may have mistakenly relied upon such assurances of one or two members of the Tribal Council in 1974 that no difficulty would be encountered in acquiring a tribal license cannot be said to constitute that type of mutually explicit understanding which would support the plaintiffs' claim of entitlement to the benefit of a tribal liquor license. This is especially true when prudence might have counselled a different type of sales agreement relative to the purchase of Bull Lake Lodge in which the sale would have been made contingent upon the outcome of the license applications, particularly in view of the volatile political situation on the reservation engendered by the *Mazurie* litigation and in view of the possibility of a change in personnel on the respective councils as a result of impending tribal elections.

▇ The Berrys' desire or expectation for a tribal liquor license does not rise to the level of a property right protectable under due process requirements; therefore, the plaintiffs are not entitled to a money judgment for the tribes' failure to issue them one. *Board of Regents v. Roth, supra; Bishop v. Wood, supra.* The plaintiffs' business was not impaired by the denial of a tribal liquor license. Whatever the value of the business was at the time the plaintiffs purchased it, their failure to obtain a tribal liquor license did not diminish that value, because at the time the lodge was purchased there was no liquor license for the premises, and none had been present there for some fourteen years. While granting of a tribal license may have improved the business, the denial of it did not alter the business. The mere expectation or desire of a tribal liquor license does not entitle the plaintiffs to damages simply because those hopes did not become a reality. *Board of Regents v. Roth, supra.*

That the plaintiffs' expectation or desire for the tribal liquor license does not rise to the level of a protectable property interest under due process requirements does not dispose of the plaintiffs' contention that they have been denied equal protection of the law. Plaintiffs base this aspect of their case upon the fact that the Joint Business Council denied their initial application for a tribal liquor license but granted a renewal of a tribal liquor license to the Red Rock Lodge. Plaintiffs contend that the facts and circumstances surrounding the operation of the Red Rock Lodge are the same or similar to those proposed by the Berrys and that to grant a renewal of a license on the one hand and to deny it on the other is a denial of equal protection.

■ It is not a denial of equal protection to permit one already engaged in the sale of intoxicating liquors to continue to do so while denying the initial application of another, for the former has a vested right while the latter has a mere hope or expectation of embarking upon the same calling at some future date. *State ex rel. Jones v. Bd. of Comm. of Natrona County, supra.*

■ Red Rock Lodge already had a license, and Ordinance No. 26 limits the cancellation of existing licenses to breaches of the provisions of the Ordinance or of the conditions of the tribal license. Nor does the failure of the tribal council to grant the second license after the plaintiffs had first obtained a county license constitute a denial of constitutional rights, for the plaintiffs took their county license subject to the general law, and their business was restricted by the provisions of that general law and their position must be considered within those provisions. *State v. Smart,* 22 Wyo. 154, 136 P. 452 (1913). That general law, as set forth in 18 U.S.C. Section 1161, permits the introduction of intoxicants into Indian country only after the party seeking to do so has complied both with the laws of the State and with any ordinance duly adopted by the tribe having jurisdiction over such area.

■ Even though the licensing procedure adopted by the Joint Business Coun-cil permitted one already licensed to continue to sell intoxicants while excluding unlicensed persons and initial applicants and resulted in benefits to the former, that result is merely the collateral and incidental effect of provisions enacted by the tribal council solely for the purpose of securing the welfare of the community. *State ex rel. Jones v. Bd. of Comm. of Natrona County, supra.* The transcript of the hearing held on May 2, 1975 indicates that members of the Joint Business Council, as well as members of the general public, were concerned with the severe alcohol abuse problems on the reservation and were desirous of restricting the introduction of additional sources of alcohol onto the reservation. The evidence is that all four applicants for initial tribal liquor licenses including the plaintiffs, were treated equally in that they all had their applications denied; and to the date of the trial, no initial liquor licenses had been issued. When a law in the nature of a police regulation is applied uniformly to all persons similarly situated, there is no violation of equal protection, *State v. Smart, supra;* and the plaintiffs have failed to sustain their burden of showing that the actions taken by the tribal council in denying their initial application for a liquor license was arbitrary and capricious. *Lewis v. City of Grand Rapids,* 356 F.2d 276 (6th Cir. 1966).

The defendants contend that since the ordinance does not provide for a hearing on the issuance of an initial license, the plaintiffs herein did not possess a protectable property right in such an initial license and that since the defendants were treated no differently than any other applicant for an initial tribal license, the plaintiffs were not entitled to any sort of hearing. While it is true that the plaintiffs did not possess a protectable property interest which would require a hearing, the concepts of equal protection and a right to fair treatment for initial applicants would seem to require some sort of hearing. That the Defendant Joint Business Council shares this view is evident in that on April 23, 1975 they notified Mr. Berry that a hearing on his request for a tribal liquor license had been set for

May 2, 1975 at 10:00 o'clock a. m.; they enclosed a copy of a notice which was to be posted indicating that the Joint Business Council had set a hearing on the application for the initial license; and they requested that Mr. Berry get in contact with the Joint Business Council should those arrangements be inconvenient.

 The question is the extent of due process which is to be afforded the plaintiffs in this particular instance. That must depend upon the importance of the interests to be protected when viewed against the interests of the tribe in protecting the public welfare. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Page v. Jackson, supra.* It must also be recognized in light of recent Supreme Court Decisions that some interests are less deserving of protection than others, and that where the interests of the person or persons seeking the protection of due process and equal protection are small, the hearing requirements are minimal. *Goss v. Lopez, supra; Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). While the plaintiffs' interest to be protected may be small because they have no property right in an initial tribal liquor license, they are, nevertheless, entitled to have their initial application treated fairly, for the concept of due process exists to protect the individual against arbitrary action by government, and the fundamental requisites of due process require that one have an opportunity to be heard at a meaningful time and in a meaningful manner. *Wolff v. McDonnell, supra; Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

 Although the events at the hearing granted to the plaintiffs by the defendants are somewhat clouded and although the procedures followed were somewhat unorthodox, it cannot be said that these procedures do not comply with the minimum requirements of due process. The plaintiffs were given notice approximately 10 days prior to the hearing that the hearing would be set, notice of the hearing was posted, and the plaintiffs were given a full opportunity to present their case. While it would have been better had the plaintiffs been asked to remain for the entire hearing and have been given an opportunity to respond to the fears raised by the subsequent protestants, this fact in and of itself is not sufficient to say that the hearing did not meet with due process requirements.

Additionally, there is nothing in the record to indicate that had the plaintiffs desired the assistance of counsel at this initial appearance that the Joint Business Council would have denied them the opportunity. In any event, the plaintiffs chose to appear by themselves and without counsel in order to present their case. They were given every opportunity to explain their position, and members of the Joint Business Council were given full opportunity to ask questions. It is the view of the Court that, while the plaintiffs were entitled to a hearing on their application, that entitlement does not include a hearing with all the trappings. So long as the plaintiffs were given adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner, the requirements of due process were satisfied. *Goldberg v. Kelly, supra.*

Judgment for the defendants and against the plaintiffs shall be entered and the complaint of the plaintiffs together with the cause shall be dismissed with prejudice.