UNITED STATES of America and Standing Rock Sioux Tribe of North Dakota and South Dakota, Appellees,

v.

Delores MORGAN and Corson County, South Dakota, Appellants.

UNITED STATES of America and Standing Rock Sioux Tribe of North Dakota and South Dakota, Appellees,

v.

Otto DOCKTER and Corson County, South Dakota, Appellants.

UNITED STATES of America and Standing Rock Sioux Tribe of North Dakota and South Dakota, Appellees,

v.

Lena GOETZ and Corson County, South Dakota, Appellants.

UNITED STATES of America and Standing Rock Sioux Tribe of North Dakota and South Dakota, Appellees,

v.

Bruce MOSER and Corson County, South Dakota, Appellants.

Nos. 79–1427 to 79–1430.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 5, 1979.

Decided Jan. 23, 1980.

Wally Eklund, Johnson, Johnson & Eklund, Gregory, S. D., argued, and Charles Rick Johnson, Gregory, on brief, for appellants.

Martin Green, Atty., Appellate Section, Land and Natural Resources Division, Dept. of Justice, Washington, D. C., argued, James W. Moorman, Asst. Atty. Gen.,

Washington, D. C., Robert D. Hiaring, U. S. Atty., Sioux Falls, S. D., and Raymond N. Zagone, Atty., Dept. of Justice, Washington, D. C., on brief, for appellees.

Reid P. Chambers, Sonosky, Chambers & Sachse, Washington, D. C., argued, Marvin J. Sonosky, Washington, D. C., on brief, for appellee, Sioux Tribe.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal by three non-Indian individuals,[1] who have places of business within the exterior boundaries of the Standing Rock Sioux Indian Reservation, from a judgment enjoining them from selling intoxicating beverages until such time as they secure a license from the Standing Rock Sioux Tribe.

Appellants Morgan and Moser challenge the district court's[2] finding that they do not qualify as an exception to the federal statute prohibiting the sale of intoxicants in Indian country. Appellant Goetz joins this appeal in contending that the district court erred in failing to make findings relative to the constitutionality of the liquor ordinance promulgated by the Standing Rock Sioux Tribe in 1974.[3]

Sections 1154 and 1156 of Title 18 of the United States Code prohibit the selling or possession of alcoholic beverages in "Indian country."[4] Although "Indian country" is generally defined in 18 U.S.C. § 1151 as including "all land within the limits of any Indian reservation under the jurisdiction of the United States Government,"[5] 18 U.S.C.

---

1. Delores Morgan (79–1427), Bruce Moser (79–1430) and Lena Goetz (79–1429). Appellants' counsel reports that the fourth appellant, Otto Dockter (79–1428) has since become deceased.

2. The United States District Court for the District of South Dakota, Northern Division, the Honorable Fred J. Nichol, presiding.

3. Goetz, as well as former defendant Dockter, presented no evidence at the district court level concerning their qualifications as an exception to the general prohibition. That court found the establishments owned by them to be required to possess both a state and tribal license.

4. 18 U.S.C. §§ 1154 and 1156 provide in pertinent part:

   (a) Whoever sells, gives away, disposes of, exchanges, or barters any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or other intoxicating liquor of any kind whatsoever, except for scientific, sacramental, medicinal or mechanical purposes, or any essence, extract, bitters, preparation, compound, composition, or any article whatsoever, under any name, label, or brand, which produces intoxication, to any Indian to whom an allotment of land has been made while the title to the same shall be held in trust by the Government, or to any Indian who is a ward of the Government under charge of any Indian superintendent, or to any Indian, including mixed bloods, over whom the Government, through its departments, exercises guardianship, and whoever introduces or attempts to introduce any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or intoxicating

   liquor of any kind whatsoever into the Indian country, shall, for the first offense, be fined not more than $500 or imprisoned not more than one year, or both; and, for each subsequent offense, be fined not more than $2,000 or imprisoned not more than five years, or both.

   \*   \*   \*   \*   \*   \*

   (c) The term "Indian country" as used in this section does not include fee-patented lands in non-Indian communities \* \* \*.
   § 1156.
   Whoever, except for scientific, sacramental, medicinal or mechanical purposes, possesses intoxicating liquors in the Indian country \* \* \* shall \* \* \* be fined \* \* \*. The term "Indian country" as used in this section does not include fee-patented lands in non-Indian communities \* \* \*.

5. 18 U.S.C. § 1151 provides:

   Except as otherwise provided in sections 1154 and 1156 of this title [18 USCS §§ 1154 and 1156], the term "Indian country", as used in this chapter [18 USCS §§ 1151 et seq.], means (a) all lands within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

§§ 1154(c) and 1156 both state that "the term 'Indian country' as used in this section does not include fee-patented lands in non-Indian communities * * *."

A statute enacted in 1953, and codified at 18 U.S.C. § 1161, modified the general prohibition by providing that alcoholic beverages may be sold in Indian country "provided such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country, certified by the Secretary of the Interior, and published in the Federal Register."

Appellants since 1953 have possessed a state liquor license which prior to the new tribal ordinance of 1974 satisfied both the state and tribal requirements.

On September 30, 1974, there was published in the Federal Register the text of an ordinance adopted by the Standing Rock Sioux Indian Tribe. This ordinance directed that:

> No person shall engage in the sale of intoxicating beverages within the Indian country under the jurisdiction of the Tribe, unless duly licensed by the Tribe and, in the case of non-Indians, by the Tribe and the State in which the licensee sells intoxicating beverages * * *.[6]

Appellants all in operation before 1974 and in possession of a state liquor license refused to pay the $200 necessary to secure the additional tribal license. Instead they claimed that they, as operators of businesses on fee-patented lands, are within non-Indian communities and therefore exempt from the liquor requirements necessary in Indian country.[7]

## I. "Non-Indian Community"

The term "non-Indian community" is not defined by statute. The Supreme Court in *United States v. Mazurie*, 419 U.S. 544, 553,

95 S.Ct. 710, 42 L.Ed.2d 706 (1975) called the term "sufficiently precise" for a man of average intelligence to know whether his behavior was proscribed. In that case, a "non-Indian community" exception did not exist for a locality bearing tribal origins, housing tribal headquarters, and consisting of a large majority of Indian families. Furthermore, petitioner in the case operated a bar located near a public housing development populated largely by Indians.[8]

*Berry v. Arapahoe & Shoshone Tribes*, 420 F.Supp. 934 (1976) furnished another example of what is not a "non-Indian community." In that case the recent owners of Bull Lake Lodge sought to enhance the business potential of the lodge by obtaining the state and tribal liquor licenses. Being denied a license by the tribe, they sought to use the section 1154(c) exception by claiming they were a non-Indian community. While the owner could point out that the specific area within a radius of three miles was inhabited entirely by non-Indians and that the population of the lodge could swell to 75 persons during the summer, the court decided that such a locality did not constitute a non-Indian community. Relying on Webster's New Collegiate Dictionary (1975), Judge Brimmer defined community as "a unified body of individuals * * * with a common interest living in a particular area; * * * an interacting population of various kinds of individuals in a common location." *Id.* at 940. This concept of community calling for a unified body with common interests apparently was not found by the *Berry* court in the characteristics of the locality described. Instead, in denying such status, the *Berry* court remarked that the lodge area had historically been subject to the jurisdiction of the tribes and the federal government, and had been regarded by the parties and the public as a part of the reservation. The court did not look for nor mention geographical village boundaries or

---

**6.** 39 Fed.Reg. 35189 (1974).

**7.** *See* 18 U.S.C. § 1154(c).

**8.** The court noted that the section 1154(c) exception is available for fee-patented lands

which *are* in non-Indian communities, rather than for those which *are not* in Indian communities. *United States v. Mazurie*, 419 U.S. 544, 553 n.10, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).

incorporated village status in the search to determine when a locality of individuals could be termed a "community." Likewise, the Supreme Court found it error to require proof of the statutory term "community" to the extent of a precisely defined concept such as one keyed to a geographical area with precise boundaries. *Mazurie* at 552–53, 95 S.Ct. 710, *supra.*

This court, in reviewing the characteristics presented in this case to the district court in regard to the status of appellants' localities, is actually reviewing a legal conclusion made by that court, namely, whether or not such surroundings can be termed a non-Indian community, or a part of same, under the federal statute employing such term as an exception.

The characteristics presented to the district court were basically as follows: Appellant Morgan operates a business known as the Dew Drop Inn in a locality known as "Mahto." Mahto is ten miles east of McLaughlin, South Dakota, a non-Indian community, and is within Mahto Township, an organized subdivision of the government of the state of South Dakota. Mahto evidently at one time had 65–70 residents, all non-Indian, but now is the home of only appellant Morgan, eight of her relatives, and the bartender employed by her. Mahto serves as a polling place for the township's 24 non-Indian and three Indian voters. Mrs. Morgan runs the post office in this locality and Mahto has its own zip code. A seasonal grain elevator also exists in this area. Mrs. Morgan claims that 95 percent of her business at the inn is from non-Indian patrons. A township constable keeps law and order in this locality and substantial services are provided by county and township government rather than by tribal or federal government. Formerly a school operated in Mahto serving 58–60 children among whom only two were Indian. Pat McLaughlin, Chairman of the Standing Rock Sioux Tribe, has lived in the area since 1941, and although he runs cattle and grows alfalfa on a "range unit" parts of which are very close to Mahto, he stated that he never did business in Mahto.

Appellant Moser operates the Cattleman's Saloon, which is three-quarters of a mile outside the non-Indian community of McLaughlin on State Highway No. 12. His business is entirely surrounded by deeded non-Indian land. All governmental services are rendered from McLaughlin and at least 70 percent of Moser's business consists of non-Indian customers from McLaughlin. Moser's business is closer to the city limits than is McLaughlin's municipal airport.

The district court, after comparison with the factual situations in *Mazurie* and *Berry*, concluded that appellants' localities could not be termed non-Indian communities or part of such a community. In oral argument before this court, counsel for the Standing Rock Sioux Tribe stated that the concept of community involves an *incorporated* village in terms of a substantial town with a lot of non-Indian residents. This court disagrees.

The federal statute uses the term "community" and not "town," "city" or incorporated entity with a minimum population. Basic to the definitions of "community" which we have reviewed is the existence of an element of cohesiveness. This apparently can be manifested either by economic pursuits in the area, common interests, or needs of the inhabitants as supplied by that locality. Cohesiveness or common interests can be more necessary to the existence of a community than can mere density of population. We believe that the political and social focal point which the Mahto locality provides year round for the surrounding township could give a man of average intelligence the understanding that as an inhabitant in this area, he lived in a "community." As a large percentage of such inhabitants are non-Indian and the history and background of the area is non-Indian, we believe it can be said that Mahto is a community serving the non-Indian inhabitants of the township.

The court also believes that Moser's business is within the "community" of McLaughlin for purposes of the exception of section 1154(c) even though it is not technically within the town's incorporated

boundaries. The statute's exception requires only that Moser's business be "in" a non-Indian community and not be such a community by itself. Moser's business serves the area of McLaughlin and is in all respects within that community of interest and influence.

We therefore reverse the district court's determination as it applies to the community status of the location of the businesses of appellants Morgan and Moser. Any constitutional issue concerning the tribal ordinance of 1974 will no longer concern these two appellants as they are within the exception of section 1154(c) and not required to follow the requirements of section 1161.

## II. Constitutionality of Liquor Ordinance

 Appellant Goetz's appeal is based upon the district court's decision not to rule on the constitutionality of the tribal ordinance of 1974.[9] Because Goetz did not present any evidence to the district court to show that her business establishment within the reservation was within a non-Indian community, the district court found such establishment not to be located in a non-Indian community. As Goetz is on the reservation she is in Indian country and if she intends to sell liquor, must comply with section 1161 which requires both the state license and the tribal license in question unless the ordinance is, in fact, unconstitutional. Upon remand we direct the district court to pass on this issue.

It has already been decided that Congress can delegate its authority to control the introduction of alcoholic beverages into Indian country; that the delegation of such authority, including the distribution and use of intoxicants, to an Indian tribe is proper; and that the authority of a tribal court can extend over non-Indians insofar as concerns their transactions on a reservation with Indians. *Mazurie* at 557–58, 95 S.Ct. 710, *supra.*

It also is true that certain constitutional restraints have been imposed upon a tribe passing such an ordinance in that § 202 of Pub.L. No. 90–284, 82 Stat. 77, 25 U.S.C. § 1302, states: "No Indian tribe in exercising powers of self-government shall * * (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." The Supreme Court in *Mazurie* did note the possible availability of the fifth amendment to correct arbitrary or discriminatory tribal exercise of delegated federal authority. *Mazurie* at 558 n.12, 95 S.Ct. 710, *supra.* This court, however, declines to pass on this question until it is first decided by the district court.

Reversed and remanded for further action by the trial court consistent with the views expressed in this opinion.

---

**9.** This was also the basis of appellant Dockter's appeal which we now assume to be moot.