10 F.3d 554
 CITY OF TIMBER LAKE, a South Dakota municipal corporation;
City of Isabel, a South Dakota municipal corporation; City
of Dupree, a South Dakota municipal corporation; American
Legion Club, Edwin Hodges Post 124, of Dupree; Mickey
Hutchinson, doing business as Mickeys Cafe & Lounge, Appellees,
v.
CHEYENNE RIVER SIOUX TRIBE; Greg J. Bourland, in his
official capacity as Chairman of the Cheyenne River Sioux
Tribe; Marvin Lecompte, in his official capacity as Chief
of Police of the Cheyenne River Sioux Tribe, Appellants.
 No. 93-1148.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 12, 1993.
Decided Nov. 29, 1993.
Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 11, 1994.
 
 Mark C. Van Norman and Timothy W. Joranko, Eagle Butte, SD, argued, for appellants.
 Timothy M. Engel, Pierre SD, argued, for appellees.
 Before RICHARD S. ARNOLD, Chief Judge, and JOHN R. GIBSON and FAGG, Circuit Judges.
 FAGG, Circuit Judge.
 
 
 1
 In this case, we must decide whether an Indian tribe has authority to regulate liquor sales on land held in fee by non-Indians in non-Indian communities within the boundaries of the tribe's reservation. The appellees, an American Legion Club, a non-Indian individual, and the South Dakota cities of Timber Lake, Isabel, and Dupree, all operate liquor establishments within the Cheyenne River Sioux Reservation on fee-patented lands in the cities. The appellees refused to obtain liquor and business licenses as required by ordinances 48 and 1 of the Cheyenne River Sioux Tribe, and the tribe brought an action in tribal court seeking to compel the appellees' compliance. The Cheyenne River Sioux Tribal Court permanently enjoined the appellees from operating their businesses within the reservation until they comply with the tribe's liquor control ordinance and business license ordinance. Cheyenne River Sioux Tribe v. Isabel City Package Liquor, 18 Indian L.Rep. 6079 (Chy.R.Sx.Tribal Ct. Jan. 8, 1991). The tribe's court of appeals affirmed in an unpublished opinion. Cheyenne River Sioux Tribe v. Dupree American Legion Club, mem. op. and order (Chy.R.Sx.Tribal Ct.App. Apr. 2, 1992).
 
 
 2
 The appellees then brought this action in federal district court against the tribe, its chairman, and its police chief (collectively the tribe), seeking permanently to enjoin the tribe from enforcing the ordinances against them. Before a trial on the merits of the permanent injunction, the district court issued a preliminary injunction preventing the tribe from enforcing the ordinances against the appellees. The tribe appeals the district court's issuance of the preliminary injunction. We reverse the issuance of the preliminary injunction and remand with instructions.
 
 
 3
 In deciding a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. See Sanborn Mfg. Co. v. Campbell Hausfield/Scott Fetzer Co., 997 F.2d 484, 485-86 (8th Cir.1993); Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 112-14 (8th Cir.1981) (en banc). We reverse the issuance or denial of a preliminary injunction if the issuance or denial is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise. Arkansas Peace Ctr. v. Department of Pollution Control & Ecology, 999 F.2d 1212, 1216 (8th Cir.1993).
 
 
 4
 The district court decided the appellees showed a likelihood of success on the merits because the tribe might lack authority to impose its liquor ordinance on the appellees as operators of liquor establishments on fee-patented lands in non-Indian communities. The tribe asserts this is an error of law because 18 U.S.C. Sec. 1161 authorizes the tribe to regulate liquor traffic within reservation boundaries, notwithstanding the nature of the community regulated or ownership of the land. If the tribe is correct, the scope of the tribe's delegated authority would be broad enough to allow imposition of not only the liquor ordinance, but also imposition of the business license ordinance on the appellees as operators of liquor establishments.
 
 
 5
 By passing the law codified as 18 U.S.C. Sec. 1161, Congress "delegated authority to the States as well as to the Indian tribes to regulate the use and distribution of alcoholic beverages in Indian country." Rice v. Rehner, 463 U.S. 713, 715, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983). The relevant part of Sec. 1161 provides:
 
 
 6
 The provisions of sections 1154, 1156 ... shall not apply ... to any act or transaction within any area of Indian country provided such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the [governing] tribe....
 
 
 7
 18 U.S.C. Sec. 1161 (1988). The tribe asserts the applicable definition of Indian country is found in Sec. 1151, which states, "Except as otherwise provided in sections 1154 and 1156 of this title, the term 'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation ... notwithstanding the issuance of any patent...." 18 U.S.C. Sec. 1151(a) (1988). The appellees counter that the applicable definition of Indian country is found in 18 U.S.C. Secs. 1154 and 1156, the federal criminal statutes that prohibit the introduction of liquor into Indian country and the possession of alcohol in Indian country. These statutes both state, "The term 'Indian country' as used in this section does not include fee-patented lands in non-Indian communities...." 18 U.S.C. Secs. 1154(c), 1156 (1988). The appellees essentially contend the tribe's authority to regulate liquor within Indian reservations under Sec. 1161 is geographically limited to the reservation areas in which the federal criminal statutes, Secs. 1154 and 1156, apply.
 
 
 8
 In support of their statutory interpretation, the appellees rely on our decision in United States v. Morgan, 614 F.2d 166, 171 (8th Cir.1980). In that case, non-Indians who operated liquor establishments on fee-patented lands within a reservation appealed a district court order enjoining them from selling liquor until they obtained tribal liquor licenses. Id. at 168-69. We reversed, holding tribal liquor license requirements under Sec. 1161 did not apply to the non-Indians operating liquor establishments on fee-patented lands because the establishments were in non-Indian communities, and thus, not within Indian country as defined in Sec. 1154(c). Id. at 171. We focused on the definition of non-Indian community, and applied Sec. 1154(c)'s definition of Indian country without exploring its applicability to Sec. 1161. See id. at 169-71.
 
 
 9
 We agree with the appellees that Morgan supports their position, and generally, one panel of this court must follow the decision of an earlier panel. The general rule does not apply, however, when a Supreme Court decision casts doubt on the earlier panel's decision. Finkel v. Stratton Corp., 962 F.2d 169, 174-75 (2d Cir.1992). We believe Supreme Court decisions undermine our decision in Morgan.
 
 
 10
 In declaring that Congress gave states as well as the Indian tribes authority to regulate liquor distribution in Indian country, the Supreme Court specifically referred to the general definition of Indian country in Sec. 1151, which includes all fee lands within reservations, and not the definition in Secs. 1154(c) and 1156, which excludes fee lands in non-Indian communities. Rice, 463 U.S. at 715 & n. 1, 103 S.Ct. at 3294 & n. 1. The appellees argue Rice does not control because it addressed the question of state authority to regulate liquor transactions in Indian country under Sec. 1161 rather than tribal authority. Federal courts, however, are not "free to limit Supreme Court opinions precisely to the facts of each case." McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 19 (1st Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992). Instead, federal courts "are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when ... [the dicta] is of recent vintage and not enfeebled by any [later] statement." Id.
 
 
 11
 The Supreme Court's statements in Rice about Indian tribes having authority to regulate liquor distribution in Indian country under Sec. 1161 were at the very least deliberated dicta. The question in Rice was whether a state could require the operator of a general store on an Indian reservation to obtain a state liquor license. Rice, 463 U.S. at 715, 103 S.Ct. at 3293-94. The Supreme Court examined Sec. 1161 and concluded Congress authorized state regulation over Indian liquor transactions. Id. at 726, 103 S.Ct. at 3299-3300. In reaching its conclusion, the Court noted Sec. 1161's legislative history shows Congress intended that state laws would apply to tribal liquor transactions as long as the tribe itself approved the transactions by enacting an ordinance. Id. The Court remarked it had already held in United States v. Mazurie, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), that by enacting Sec. 1161, Congress delegated part of its authority over liquor transactions on Indian reservations to Indian tribes. Rice, 463 U.S. at 730, 103 S.Ct. at 3301-02. This delegated power allows a tribe to regulate the sale of alcohol by non-Indians on fee-patented lands within reservation boundaries. Mazurie, 419 U.S. at 546, 553-58, 95 S.Ct. at 712, 715-18. The Court stated the delegation of power is found in Sec. 1161's language requiring that liquor transactions conform " 'both with the laws of the State ... and with an ordinance duly adopted' by the governing tribe." Rice, 463 U.S. at 730, 103 S.Ct. at 3302 (quoting 18 U.S.C. Sec. 1161). The Court observed it would ignore Sec. 1161's plain language if the Court failed to find the same delegation in the states' favor. Id. at 730-31, 103 S.Ct. at 3301-02. Thus, Rice makes clear that tribes possess authority to regulate liquor transactions in Indian country.
 
 
 12
 By specifically referring to the broad definition of Indian country in Sec. 1151, id. at 715 & n. 1, 103 S.Ct. at 3294 & n. 1, the Court in Rice also made clear that the geographic scope of state and tribal authority extends to a reservation's four corners. The appellees' reliance on the narrow definition of Indian country in Secs. 1154(c) and 1156 is simply misplaced. By the express terms of Secs. 1154(c), 1156, and 1151, the narrow definition of Indian country contained in Secs. 1154(c) and 1156 applies only to the reach of those federal criminal liability statutes, and the broad definition in Sec. 1151 applies to all other sections in the chapter, like Sec. 1161. Further, Sec. 1161's delegation of regulatory power to the tribes is not derived from Secs. 1154 and 1156. The Court in Rice noted that in Mazurie it had rejected the view that Sec. 1161 was merely an exemption from federal criminal liability. Rice, 463 U.S. at 730, 103 S.Ct. at 3301-02. Instead, the Court said Sec. 1161 affirmatively empowers both the Indian tribes and the states to regulate liquor transactions. Id. Indeed, the viability of federal prosecution under Secs. 1154 and 1156 now turns on Sec. 1161, which exempts an otherwise potential defendant from federal prosecution under Secs. 1154 and 1156 if the person conforms with a tribal ordinance adopted under the tribe's delegated power. See id. at 728, 103 S.Ct. at 3300-01. Also, a careful reading of Mazurie shows that when the Court said Sec. 1161 is a Congressional delegation of power to Indian tribes to regulate liquor sales on fee lands within reservations, the Court meant all fee lands within reservations, including fee lands in non-Indian communities. See Mazurie, 419 U.S. at 554, 95 S.Ct. at 716 (discussing Perrin v. United States, 232 U.S. 478, 482, 34 S.Ct. 387, 389, 58 L.Ed. 691 (1914), which "dealt with the sale of intoxicating beverages within premises owned by non-Indians, on privately held land in an organized non-Indian municipality"). Finally, after Rice, a plurality of the Supreme Court indicated that the geographic scope of the authority Congress delegated to regulate liquor traffic in Indian country includes fee lands in non-Indian communities. See Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation, 492 U.S. 408, 428, 109 S.Ct. 2994, 3006-07, 106 L.Ed.2d 343 (1989) (plurality) (citing 18 U.S.C. Sec. 1151 in conjunction with Sec. 1161 as an example of express Congressional delegation of authority over non-Indians).
 
 
 13
 In light of the Supreme Court's decisions, we conclude Congress delegated the tribe authority to regulate liquor traffic on fee lands owned by non-Indians in non-Indian communities within reservations. This delegated authority permits the tribe to impose both the liquor control ordinance and the business license ordinance on the appellees in this case. Given our conclusion that Congress expressly delegated authority to the tribe, we need not decide whether the tribe has inherent sovereign power to regulate liquor sales by non-Indians. See Montana v. United States, 450 U.S. 544, 564-66, 101 S.Ct. 1245, 1257-59, 67 L.Ed.2d 493 (1981) (providing exceptions to general rule that tribe's inherent sovereign powers do not extend to non-Indian activity). Because the district court based its issuance of the preliminary injunction on the erroneous view that the tribe lacks authority to impose the liquor control ordinance and business license ordinance on the appellees, we reverse the issuance of the preliminary injunction. See Arkansas Peace Ctr., 999 F.2d at 1216; see also Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir.1989); Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir.1987).
 
 
 14
 The appellees contend the district court should have granted the injunction against enforcement of the tribal court's compliance order on the ground that the tribal constitution does not give the tribal court personal jurisdiction over the appellees. The appellees raised this contention in their brief as a cross-appeal. The tribe filed a motion to strike the cross-appeal, arguing the district court's injunction order granted the appellees all the relief they requested and the appellees' cross-appeal merely asserted an alternative ground for affirming the district court. Another panel of this court granted the tribe's motion to strike and dismissed the cross-appeal. Thus, as the tribe recognized in its motion to strike the cross-appeal, the appellees' contention remains before this panel as an alternative ground for affirmance. The appellees raised the contention in the district court, but the district court did not address it. We could simply reverse without considering the contention because the district court based its issuance of the injunction on an error of law, and leave the appellees to pursue their alternative ground in the district court. Because the appellees' contention presents a question of law, however, we will address it now in the interest of judicial economy.
 
 
 15
 We reject the appellees' contention. The tribal courts interpreted the constitutional language as allowing the tribal courts to exercise personal jurisdiction over the appellees, 18 Indian L.Rep. at 6080; Tribal Ct.App. mem. op. at 4-6, and we defer to the tribal courts' interpretation, even though non-Indians are involved, Sanders v. Robinson, 864 F.2d 630, 633 (9th Cir.1988); see Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 16, 107 S.Ct. 971, 976-77, 94 L.Ed.2d 10 (1987). Further, the appellees do not assert that any federal law has curtailed the tribe's power to assert jurisdiction. National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 852, 105 S.Ct. 2447, 2451-52, 85 L.Ed.2d 818 (1985) (explaining limitations of federal question jurisdiction); see Sanders, 864 F.2d at 633. We also note that after the tribal courts issued their decisions, the tribe amended its constitution to state, "The tribal courts shall have jurisdiction over claims and disputes arising on the reservation." Although the tribal courts have not had an opportunity to consider the question, see National Farmers, 471 U.S. at 855-57, 105 S.Ct. at 2453-54 (requiring exhaustion of tribal court remedies before consideration by district court), we believe the amendment would cover the appellees.
 
 
 16
 Having decided the district court's decision to grant a preliminary injunction was premised on an erroneous interpretation of Sec. 1161, we reverse. We remand to the district court with instructions to dismiss this action on the merits.